[Crim. No. 28675. Second Dist., Div. One. Nov. 15, 1976.]

In re CHARLES L., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
CHARLES L., Defendant and Appellant.

**COUNSEL**

Scott T. Johnson, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LILLIE, J.—The minor appeals from a judgment sustaining a petition filed pursuant to section 602, Welfare and Institutions Code, and declaring him a ward of the court. Initially the petition alleged that he committed a robbery (§ 211, Pen. Code) and in the course thereof intentionally inflicted great bodily injury. However, later the court vacated the finding sustaining the petition and, pursuant to stipulation, ordered the petition amended to allege assault by means of force likely to produce great bodily injury (§ 245, subd. (a), Pen. Code), and sustained the same. The only ground urged for reversal is that the Los Angeles County District Attorney's office, because of an alleged conflict of interest, could not properly represent the petitioner herein.[1]

Appellant and another minor (Walter) were charged with committing a robbery during the course of which great bodily harm was inflicted on the victim. At the time of the arraignment, Walter was represented by Eugene Hall; appellant was represented throughout the entire proceedings below by John Kemp. After the arraignment and before the adjudication hearing, Hall joined the Los Angeles County District Attorney's office.[2]

On the day of the adjudication hearing Walter's counsel, Mark W. Brown, made a motion arguing that because of Hall's new employment, a conflict of interest existed and the district attorney's office was

---

[1] *People* v. *Superior Court (Greer)* (Cal.App.) (hg. granted by Cal. Supreme Court Aug. 12, 1976) questions the authority of the trial court to order disqualification of the district attorney's office for a conflict of interest in an ordinary criminal prosecution.

However, in the juvenile sphere, Welfare and Institutions Code, section 681, requires the consent or request of the juvenile court judge for the district attorney to appear in the proceedings. We see no need to question the authority of the court to prevent participation by the district attorney because of a conflict of interest.

[2] The record does not reveal Hall's whereabouts or duties within the district attorney's office.

disqualified from handling the case for petitioner.[3] Appellant's counsel joined in the motion "since [he] was [there] at the arraignment and conferred with Mr. Hall, the attorney, and discussed the defenses." The appearing deputy district attorney stated, "For the record, I have no knowledge of a Mr. Hall. And I have never discussed the case with him, and I know nothing of him." The motion was heard and denied.

Appellant assigns as error the court's failure to disqualify the district attorney's office based on the alleged conflict of interest. The fundamental question, of course, is whether or not on the record before us a conflict of interest can be said to exist.

The precise issue appears not to have arisen in any previous California case. Indeed, few, if any of the cases in this state in which there was a real or imagined conflict in the representation of different interests are of real aid. However, our starting point in the consideration of whether there was any impropriety involved in this instance must be the statutes and rules governing the conduct of members of the Bar of the State of California.

"A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client." (Rule 4-101, Rules of Professional Conduct.) This rule implements the duty of an attorney "To maintain inviolate the confidence, and at every peril to himself to preserve the secrets of his client." (Bus. & Prof. Code, § 6068, subd. (e); *Jacuzzi* v. *Jacuzzi Bros., Inc.,* 218 Cal.App.2d 24, 28 [32 Cal.Rptr. 188].) Thus it is only within the context of the attorney-client relationship that the impact of this rule is felt. Once the relationship is established, the question is whether confidential information was imparted during its existence. For a conflict to arise there must be a threatened disclosure of that information resulting from adverse employment of the attorney. "[N]othing in the rule prohibits an attorney from accepting employment adverse to a former client if the matter has no relationship to confidential information acquired by reason of or in the course of his

---

[3]Originally the matter was discussed with Judge Smith; subsequently the motion was made before Commissioner Chernack who directed the parties to make it before Judge Smith which they did, and the same was denied; upon their return to Commissioner Chernack they renewed the motion which she heard and denied.

employment by the former client. . . ." (*Goldstein* v. *Lees,* 46 Cal.App.3d 614, 619 [120 Cal.Rptr. 253].)

■ In the instant case, there was never an attorney-client relationship between appellant and Hall. While we might assume that Hall, as Walter's attorney, was privy to confidential disclosures on the part of Walter, we cannot make a similar assumption as to appellant, Walter's "codefendant." The only matter in which conflict might arise is if the consultation between appellant's attorney and Hall involved the revelation of confidences obtained by appellant's attorney within the scope of his representation of appellant.

Appellant's attorney stated only that he had "conferred and discussed defenses" with Hall.[4] At no time was it claimed that Hall thus had been introduced to the confidences of appellant. There is no indication that the discussion involved other than trial tactics or strategy. Appellant points to nothing in the record which would suggest that Hall had acquired confidential information concerning him; and it does not otherwise appear that Hall was in possession of appellant's confidences or even talked to him. In a civil setting wherein the question of whether an attorney had obtained confidential information was submitted on affidavits and declarations, it was held that where there is conflicting evidence and the court has resolved a question of fact, the determination of the trial court is conclusive on appeal. (*Jacuzzi* v. *Jacuzzi Bros., Inc., supra,* 218 Cal.App.2d at pp. 27-28.)

But even were it shown that Hall had obtained confidential information from appellant's attorney, how is the conflict created? Hall did not represent the petitioner; and the deputy district attorney who did, denied any contact with or knowledge of Hall. Thus appellant tacitly seeks to invoke the principle that for the purpose of disqualification of counsel, where one member of a firm has certain knowledge, that knowledge will be imputed to every other member of the firm. (*Laskey Bros. of W. Va., Inc.* v. *Warner Bros. Pictures* (2d Cir. 1955) 224 F.2d 824, 826 [cert. den., 350 U.S. 932 (100 L.Ed. 814, 76 S.Ct. 300)].) If possession of confidential information were imputed to each member of the district attorney's office, the conflict between the duty to prosecute and the duty to maintain confidences would be apparent.

---

[4]"For the record, since I was here at the arraignment and conferred with Mr. Hall, the attorney, and discussed the defenses, I would join in the motion." But the only defense raised at the adjudication hearing was that of mistaken identity.

"The premise upon which disqualification of law partners is based is that there is within the law partnership a free flow of information, so that knowledge of one member of the firm is knowledge to all." (*People* v. *Wilkins,* 28 N.Y.2d 53, 56 [320 N.Y.S.2d 8, 268 N.E.2d 756].) Any analogy between a private law firm and the district attorney's office is tenuous at best; but even if drawn, the premise in question will not extend that far. There is no evidence that information concerning those accused flows freely within the district attorney's office, and the size and structure of the organization makes any such inference extremely dubious. In Los Angeles County there are well over 400 deputy district attorneys. The district attorney's office has seven branch offices and seventeen area offices. There are numerous internal divisions. In 1975 the office handled more than 83,000 felony complaints alone. (Cf. *People* v. *Wilkins, supra,* 28 N.Y.2d at p. 57.) When this information is coupled with the presumption that Hall, as a member of the bar, has respected and will respect the confidence with which he might have been entrusted (*Fox* v. *Shapiro,* 84 Misc.2d 223 [375 N.Y.S.2d 945, 950]; *State* v. *Brazile,* 231 La. 90 [90 So.2d 789, 790], our conclusion is obvious. The naked fact that some member of the district attorney's office might have had some confidential information respecting appellant's case is insufficient, ipso facto, to constitute a conflict of interest.

We need not question the proposition: "An attorney cannot be permitted to assist in the prosecution of a criminal case if by reason of his professional relations with the accused he has acquired a knowledge of the facts upon which the prosecution is predicated or which are closely interwoven therewith." (*People* v. *Curry,* 1 Ill.App.3d 87 [272 N.E.2d 669, 672]; *Thoreson* v. *State,* 69 Okla. Crim. 128 [100 P.2d 896, 899]), or the decisions in some states holding that participation in the defense of an accused by an attorney who later becomes a member of the staff of the office of the prosecutor must result in a disqualification of the prosecutor's office in order to preserve the appearance as well as the substance of fairness. (E.g., *State* v. *Latigue,* 108 Ariz. 521 [502 P.2d 1340]; *State* v. *Chambers,* 86 N.M. 383 [524 P.2d 999].) This is simply a different case. Hall did not represent or participate in the representation of the petitioner; appellant was never represented by Hall; there is no showing that appellant's confidences were divulged to Hall; and finally, there is no reason to believe that such information, were Hall in possession of it, should be imputed to the whole of the district attorney's staff. (See *People* v. *Washington,* 52 App.Div.2d 984 [383 N.Y.S.2d 422, 423]; *People* v. *Loewinger,* 37 App.Div.2d 675 [323 N.Y.S.2d 98, 100-101], affd. 30 N.Y.2d 587 [330 N.Y.S.2d 801, 281 N.E.2d 847]; *State* v. *Miner,* 128 Vt.

55 [258 A.2d 815, 817-819].) There is here neither real nor apparent impropriety.[5]

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

---

[5]Thus we have no occasion to decide the appropriate test of reversible error for an erroneous refusal to order disqualification of the district attorney's office.