[Civ. No. 55260. Second Dist., Div. One. July 17, 1979.]

GRAPHIC PROCESS COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
PETER ANDREW NOTARAS, Real Party in Interest.

**COUNSEL**

Fierstein & Sturman, Harvey Fierstein and Edward C. Broffman for Petitioners.

No appearance for Respondent.

Peter Andrew Notaras, in pro. per., and Michael Fate for Real Party in Interest.

**OPINION**

**HANSON, J.—**

### INTRODUCTION

Defendants Graphic Process Company, a California corporation (hereinafter Graphic), Color Corporation, a California corporation (hereinafter Color), Salvatore Portaro and William Ziering in superior court civil action number C 258621, petition this court for a writ of mandate seeking to compel respondent superior court to vacate its order granting real party in interest/plaintiff law firm Peter Andrew Notaras, a professional corporation, real party in interest (hereinafter plaintiff and/or NPC) motion to disqualify defense counsel Fierstein & Sturman Law Corporation (hereinafter FSLC) and in lieu thereof issue an order denying said motion.

In the alternative, defendants seek an order from this court compelling the respondent superior court to permit them to retain their present counsel FSLC for all purposes other than representation at the time of trial.

### BACKGROUND

NPC, appearing as counsel on its own behalf, is the plaintiff in superior court case number C 258621 seeking recovery of attorney's fees and damages for fraud from its former clients Graphic and Color, petitioners herein.

Defendants Graphic and Color appeared through their present counsel FSLC by serving a first set of interrogatories upon plaintiff NPC, who thereafter filed a notice of motion in the respondent superior court for an order disqualifying FSLC as defendants' trial counsel.[1]

Plaintiff NPC's grounds for disqualification of defense counsel as stated in its moving papers below and in its opposition to defendants' petition for writ of mandate are (1) that plaintiff NPC intended to call Attorney Herbert D. Sturman, a member of FSLC, to establish the existence of the underlying contract sued upon and to establish the propriety and reasonableness of the fees charged by the real party in interest, and (2) that a "reasonable probability" exists that plaintiff NPC will name defense counsel (FSLC) as additional defendants in this action.

The statement of facts accompanying plaintiff NPC's motion to disqualify FSLC states, in pertinent part, that NPC had represented defendant corporations for almost four years, that in April 1977, it advised the corporations that regular payments of fees would have to be made, and that defense counsel Sturman of FSLC negotiated a monthly payment plan for defendant corporations. It was also stated that Attorney Sturman was a "percipient witness" to the rendering of legal services by NPC, in that in one of the cases (the Andresen case) in which NPC represented Graphic and Color a codefendant Portaro (who was sued as an alter ego of the corporations) was represented by Attorney Sturman who had received copies of all the pleadings and some of the correspondence prepared by NPC in that action. Plaintiff and Attorney Sturman filed jointly in that action a motion for summary judgment. Attorney Sturman allegedly advised NPC that defendants in the present litigation did not contest the nature, extent or value of the legal services rendered by NPC in the Andresen lawsuit.

The declarations of Attorneys Harvey Fierstein and Herbert D. Sturman of FSLC attack each of the grounds listed in the disqualification motion.

The declaration of Attorney Fierstein states that their firm is general counsel for the corporate defendants and that he is the senior member of FSLC which consists of eight members, five of which are partners and three associates; that he (Fierstein) supervises all litigation matters and

---

[1]Plaintiff NPC's motion also sought relief relating to the first set of interrogatories propounded by Graphic and Color and for a protective order. The court below continued that portion relating to discovery thus limiting the instant petition for writ of mandate to the superior court order disqualifying FSLC.

Attorney Sturman, a certified tax specialist, is involved in the field of taxation and business, corporate, commercial and real estate matters; that the legal fees which were sought by NPC relate, almost exclusively, to legal services rendered in three prior actions, namely: Andresen v. Ziering (Los Angeles Super. C., No. 74190); Graphic Process Company v. Andresen (Los Angeles Super. C., No. 704625); and an action entitled May Company Department Stores v. Graphic Process Company (United States District Court No. 771293-R); that the Andresen action and the Graphic action were consolidated for trial (hereinafter collectively the Andresen action), and involved an intracorporate dispute between shareholders of the corporations relating to alleged wrongful distributions of corporate assets and matters relating to salary structure; that the May Company case which involved purported "illegal kick-backs" was litigated in the federal courts and defendants herein were granted summary judgment and that the matter is now on appeal with FSLC representing the corporate defendants herein; that NPC was the fourth law firm to represent defendants in the Andresen action; that prior to the engagement of the services of NPC, the defendants incurred bills for legal services, in the total sum of $40,000; that NPC represented the corporations in the Andresen action while defendant Portaro was represented by FSLC and its predecessors, and Ziering was represented by Attorney Boyars; that FSLC played a passive role in the litigation but its role became more active at the time the lawsuites were settled; that NPC billed the aggregate sum of approximately $256,000 to the corporate defendants for the 40-month interval of April 1975 through July 1978, and was paid a sum in excess of $163,000 during that period of time; that in addition there were payments and billings for the period of September 1974, to and including March 1975, from NPC; that in addition approximately $40,000 in attorney's fees were paid to the prior attorneys, and additional attorney's fees incurred to Attorney Boyars for representation of the individual defendants which fees exceeded $40,000; that almost the entirety of these fees were related to the Andresen litigation, which litigation commenced as a lawsuit seeking slightly more than $100,000 in compensatory damages.

Attorney Fierstein stated that he will have the primary responsibility for defending the instant lawsuit brought by NPC seeking damages from its former client; that his primary assistance will come from Attorney Edward Broffman of their firm; that he (Attorney Fierstein) did *not* participate in the prior litigation in any manner whatsoever; that he never met Attorney Fate, nor Attorney Boyars; that he (Attorney Fierstein) had not dealt with defendant Ziering until the instant dispute arose; that he (Attorney

Fierstein) has met Attorney Notaras of NPC on one or two prior occasions which were almost exclusively of a social nature; that the Andresen litigation went to trial in March of 1978, and after four (4) trial days the parties entered into serious settlement negotiations resulting in a settlement; that after the settlement was consummated, FSLC became involved in the existing controversy between NPC and its former clients, defendants and petitioners herein; that he (Attorney Fierstein) then learned that the aggregate figures for the services described above amounted to more than $350,000 with NPC charging substantially in excess of $250,000; that because of his litigation experience he was asked to analyze the nature of the services rendered, as represented by the billings, and to make an investigation as to the propriety of the fees that were charged; that as a result of his investigation he came to the conclusion that further investigation was necessary before he could personally determine whether or not the aggregate billings were fair and just and needed additional information from NPC; that on August 31, 1978, he wrote to Mr. Notaras of NPC asking for additional information and received a written response on October 2, 1978, to his letter. Attorney Fierstein stated that after receiving the letter he "came to the conclusion, reluctantly, that many of the charges were suspect"; that "there is now ample justification for the position of the Defendants in this litigation; in fact, it is the position of the undersigned he would be derelict in his duties to his clients, *and to the bar of this state,* if he failed to make further investigation in this matter." He further stated that "[w]ith respect to all criteria employed in determination of attorneys fees, it is felt that the NOTARAS firm has been more than adequately compensated. If anything, said firm has been over-compensated."

In addition, Attorney Fierstein asserts that FSLC has a familiarity with the underlying litigation, i.e., the May Company lawsuit and the Andresen litigation and his firm has expended many hours and achieved knowledge of the issues raised therein and has been compensated for such services; that FSLC has a relationship with Mr. Portaro and with the remaining defendants and is presently general counsel for the corporate defendants; that Attorney Fierstein further alleges that "the purpose of the instant motion is to allow the plaintiff the opportunity to take and procure an unfair advantage over its former clients in this meritless litigation" by seeking "to have its former clients expend substantial sums of money with other counsel so that other counsel can, hopefully, at some future time, acquire and achieve knowledge that present counsel (i.e. FSLC) now possess."

Attorney Sturman in his declaration attacks each of the grounds upon which NPC based its motion to disqualify FSLC by stating that it "is totally incorrect" that he (Sturman) is a "percipient witness and has extensive knowledge with respect to the nature, extent and scope" of legal services performed by NPC; that Attorney Notaras' declaration shows that his (Sturman's) involvement was "merely incidental" or "peripheral"; that the "contract sued upon," assuming it is for the reasonable value of services rendered, is not in dispute; that the necessity of the services performed by NPC and the reasonable value thereof is in dispute; that within provisions of rule 2-107 an attorney will not be disqualified when his testimony relates to an uncontested matter; that by seeking to disqualify FSLC on the ground that a "reasonable probability" exists that plaintiff may also name that law firm as a party defendant demonstrates the lack of good faith, sincerity, motivation and purpose of plaintiff's motion in that the moving papers do not contain a scintilla of a factual basis for such an action unless plaintiff NPC is of the conviction that any lawyer that advises a client that it should not pay what he (the lawyer) believes to be an unconscionable bill is subject to being sued by the alleged creditor.

Respondent superior court in its order of January 3, 1979, did not specify its grounds for granting NPC's motion to disqualify FSLC, but merely stated, "plaintiffs' Motion for Order Disqualifying Fierstein & Sturman as defendants' trial counsel is granted pursuant to the moving party's Points and Authorities and Declarations."

Plaintiff NPC's points and authorities before the respondent court below for all practical purposes relied exclusively on rule 2-111(A)(4), Rules of Professional Conduct (hereinafter rule 2-111(A)(4)) and *Comden v. Superior Court* (1978) 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971].

CONTENTITONS

█ Defendants/petitioners herein assert that respondent superior court abused its discretion in granting plaintiff NPC's motion to disqualify defense counsel (FSLC) in that respondent superior court misconstrued and misapplied both *Comden v. Superior Court, supra,* 20 Cal.3d 906, and rule 2-111(A)(4) which *Comden* interpreted as applied to the facts of that case; that *Comden* is factually distinguishable from the case at bench, and that rule 2-111(A)(5) of the Rules of Professional Conduct (hereinafter rule 2-111(A)(5)) controls and not rule 2-111(A)(4).

## DISCUSSION

In *Comden v. Superior Court, supra,* 20 Cal.3d 906, the court held that pursuant to rule 2-111(A)(4)[2] when trial counsel foresees the possibility that the member or a member of the firm "ought" to testify *on behalf of the client,* counsel should resolve any doubt in favor of preserving the testimony and withdraw from representation of the client. Failing voluntary withdrawal by trial counsel, the *Comden* court held a trial court is vested with broad discretion to order withdrawal in determining whether the attorney's testimony will be necessary to protect his client's interests and in exercising its discretion, the following factors should be evaluated: (1) the significance of the matters to which the attorney might testify; (2) the weight his testimony might have in resolving such matters; and (3) the availability of other witnesses or documentary evidence by which these matters may be independently established. If the court concludes that such testimony is likely to be necessary, it should order a timely withdrawal "consistent with minimizing prejudices which may result from the substitution of counsel." (See *Comden v. Superior Court, supra,* 20 Cal.3d at p. 913.)

The *Comden* court based its conclusion on ethical reasons stating at page 915: "[U]ltimately the issue involves a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility. 'The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. . . . (See fn. 3.) [The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of our judicial process.' (*Hull v. Celanese Corporation* (2d Cir. 1975) 513 F.2d 568, 572.)" (Fn. omitted.)

We conclude that in the case at bench the respondent court abused its discretion by misapplying *Comden* in that *Comden* is factually distinguishable from the case at bench and, moreover, the reasons behind the

---

[2]Rule 2-111(A)(4) provides: "If upon or after undertaking employment, a member of the State Bar knows or should know that he or a lawyer in his firm ought to be called as a witness on behalf of his client in litigation concerning the subject matter of such employment he shall withdraw from the conduct of the trial and his firm may continue the representation and he or a lawyer in his firm may testify in the following circumstances:

"(a) If the testimony will relate solely to an uncontested matter; or

"(b) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or

"(c) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client; or

"(d) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

*Comden* holdings do not apply to the case at bench. We further conclude that rule 2-111(A)(5)[3] (which pertains to the situation where the opposing party plans to call his adversary's counsel as a witness) controls and not rule 2-111(A)(4)[4] (which limits the manner or areas in which counsel may testify when called as a witness on behalf of his client) which *Comden* interpreted in light of its factual circumstances.

In *Comden,* unlike the instant case, the court analyzed the factual situation where it was apparent by counsel's declaration that he would be required to testify *on behalf of his own client.* The *Comden* court therefore interpreted rule 2-111(A)(4) as it applied to those facts.

Here, unlike *Comden,* plaintiff NPC's motion proceeds on the ground that it will call defendant petitioners' counsel (FSLC) as a witness. We

---

[3]Rule 2-111(A)(5) provides: "If, after undertaking employment in contemplated or pending litigation, a member of the State Bar learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

[4]See footnote 2, *ante.*

We are informed that on December 28, 1978, the Board Committee on Lawyer Services unanimously recommended that the Board of Governors adopt amendments to rule 2-111(A)(4), which was adopted by the Board of Governors. The reason for the recommended amendments was that "the *Comden* decision has been a springboard to motions to disqualify counsel as part of the tactics of an adversary proceeding, and it has been reported that some courts are literally applying the rule." It was recommended that rule 2-111(A)(4) be modified to read as follows:

"(4) If upon or after undertaking employment, a member of the State Bar knows or should know that ~~he~~ *the member* or a lawyer in ~~his~~ *the member's* firm ought to be called as a witness on behalf of ~~his~~ *the member's* client in litigation concerning the subject matter of such employment ~~he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation except that he may continue the representation and his firm may continue the representation and he or a lawyer in his firm may testify in the following circumstances:~~ *the member may continue employment only with the written consent of the client given after the client has been fully advised regarding the possible implications of such dual role as to the outcome of the client's cause and has had a reasonable opportunity to seek the advice of independent counsel on the matter. In civil proceedings, the written consent of the client shall be filed with the court not later than the commencement of trial. In criminal proceedings, the member has the duty, before testifying, of satisfying the court that such consent has been obtained. The client's consent need not be obtained in the following circumstances:*

"(a) if the testimony will relate solely to an uncontested matter; or

"(b) if the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or

"(c) if the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

~~"(d) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."~~

The proposed amendments to rule 2-111(A)(4) as set forth above reportedly are pending before the Supreme Court pursuant to Business and Professions Code section 6076 for approval and have been given Supreme Court number Bar Misc. No. 4149.

therefore conclude that rule 2-111(A)(5) controls which was not considered by the *Comden* court. Rule 2-111(A)(5) (see fn. 3, *ante*) in substance provides that in situations where an adverse party calls his opposing party's counsel as a witness, the counsel who will or may testify will *not* be disqualified *unless* it is established that his client will be prejudiced by the testimony. Rule 2-111(A)(5) establishes a much more stringent test for disqualification than does rule 2-111(A)(4). The record reflects that the disqualification motion below did *not* encompass a showing of prejudice to defendant petitioners herein, if Attorney Sturman (or any other member of FSLC) was called as a witness in a trial of the matter. If the law was otherwise, every party could cause disqualification of his adversary's counsel simply by threatening to call the opposing attorney as a witness.[5] Such a law would wreak havoc in the legal profession and the courts and be repugnant to "the needs to maintain ethical standards of professional responsibility" and to preserve "the public trust" discussed in *Comden* as the basis for its holdings under the facts of that case.

The distinction between the application of rule 2-111(A)(4) and rule 2-111(A)(5) and the purposes to be served by each was spelled out in *People* ex rel. *Younger* v. *Superior Court* (1978) 86 Cal.App.3d 180 [150 Cal.Rptr. 156] (petition for hg. den. by the Supreme Ct. on Jan. 24, 1979).

The *People* ex rel. *Younger* case involved a criminal case in which the Court of Appeal issued a peremptory writ of mandate directing the trial court to vacate its order recusing the prosecutorial office of the district attorney and commanding the Attorney General to assume prosecution of the case. However, the following language at page 191 is equally applicable under the facts of the instant *civil action*: "[T]he likelihood that an attorney will be a material trial witness does not disqualify him under the rule [2-111(A)(4)] unless he ought to be called as a witness on behalf of his client. The very next subdivision of the rule, 2-111(A)(5), provides: 'If, after undertaking employment in contemplated or pending litigation, a member of the State Bar learns or it is obvious that *he or a lawyer in his firm may be called as a witness other than on behalf of his*

---

[5]The *Comden* case and the United States Court of Appeals, Second Circuit in *J. P. Foley & Co., Inc.* v. *Vanderbilt* (2d Cir. 1975) 523 F.2d 1357, have recognized that the court must not be naive to the fact that a disqualification motion may be a trial tactic. In the latter case, the court said at page 1360: "After all, in cases that do not involve past representation [conflict cases] the attempt by an opposing party to disqualify the other side's lawyer must be viewed as part of the tactics of an adversary proceeding. As such, it demands judicial scrutiny to prevent literalism from possibly overcoming substantial justice to the parties."

*client, he may continue the representation* until it is apparent that his testimony is or may be prejudicial to his client.' (Italics added.) The provisions of Disciplinary Rule 5-102(B) of the American Bar Association Code of Professional Responsibility are identical. The decided cases are in accord. (*People* v. *Superior Court (Hollenbeck)*, 84 Cal.App.3d 491, 501 [148 Cal.Rptr. 704]; see also *Chessman* v. *Teets* (9th Cir. 1956) 239 F.2d 205, 214 [vacated on other grounds, 354 U.S. 156 (1 L.Ed.2d 1253, 77 S.Ct. 1127)]; *United States* v. *Maloney* (W.D.Pa. 1965) 241 F.Supp. 49, 51; *State* v. *Howard* (1976) 27 Ariz.App. 345 [554 P.2d 1282, 1285]; *Beavers* v. *Conner* (Fla.App. 1972) 258 So.2d 330, 332-333; *State* v. *King* (Iowa 1977) 256 N.W.2d 1, 15; *State* v. *Bennett* (La. 1976) 341 So.2d 847, 858; *Galarowicz* v. *Ward* (1951) 119 Utah 611 [230 P.2d 576, 580]; *Peterson* v. *Warren* (1966) 31 Wis.2d 547 [143 N.W.2d 560, 569-570] [overruled on other grounds in *Allen* v. *Ross* (1968) 38 Wis.2d 209 (156 N.W.2d 434, 438)]; Annot., Prosecuting Attorney As a Witness in Criminal Case (1973) 54 A.L.R.3d 100, 162.) Although this distinction was at least implicit in the argument of the district attorney in the trial court (see fn. 8, *ante*), its significance was apparently not recognized by the court." (See also *People* v. *Superior Court (Hollenbeck)* (1978) 84 Cal.App.3d 491, 501 [148 Cal.Rptr. 704].)

Nor does the instant case fall within the rule that disqualification is to protect a relationship of confidence and entrustment. ▇ Confidences acquired in the course of an attorney-client relationship are protected by preventing the recipient of those confidences from representing an adverse party. "The classic cases involve the simple switching of sides, so that an attorney who once represented 'A' now seeks to represent 'B' in a matter materially related to the original representation. [Citations.] [¶] . . . [For example], where an attorney had been employed by a corporation, either as house counsel or in some other capacity and, in the course of that employment, had been in a position to obtain confidential data about the operation of the corporation. Later, that attorney is about to represent a party adverse to the corporation—often a stockholder or an officer of the corporation—in a suit against the corporation. Here, . . . disqualification occurs because of the possibility that information obtained by the attorney in his earlier professional employment may be used by him against his former employer-client. [Citations.]" (*Cooke* v. *Superior Court* (1978) 83 Cal.App.3d 582, 590 [147 Cal.Rptr. 915]; see also *Quaglino* v. *Quaglino* (1979) 88 Cal.App.3d 542, 550 [152 Cal.Rptr. 47].)

In the instant case, the declarations make it clear that neither FSLC nor Attorney Sturman ever represented NPC as a client nor was any

communication between Attorney Sturman and NPC in winding up the Andresen case settlement confidential in character.

In any event, the declaration of Attorney Sturman establishes that the petitioners do not contest the existence of the underlying contract upon which the action for attorneys' fees is based and therefore cannot be a basis for disqualification. Furthermore, the reference in the disqualification motion and supporting declaration by Attorney Notaras to the purported fact that Attorney Sturman of FSLC was a "percipient witness" to the legal services performed by Notaras Corporation is not borne out by the fact that Attorney Sturman merely received copies of pleadings prepared by NPC in the underlying litigation. Such pleadings are a matter of public record and in the files of parties to the within action. Attorney Sturman in his declaration states that he was not a witness to all of the legal services performed by NPC and Attorney Notaras' declaration candidly admits this fact by stating that Attorney Sturman did not know what services had been performed by NPC on behalf of the corporate petitioners and that Attorney Sturman's role in the underlying litigation was peripheral.

■ Nor does the record in the instant case show that NPC offered a scintilla of evidence relating to any misconduct or wrongdoing on the part of FSLC that would permit NPC to name petitioners' counsel (FSLC) as defendants in the instant action. Such a veiled threat is not a basis for disqualification.

DISPOSITION

Let a peremptory writ of mandate issue to the Superior Court of Los Angeles County commanding it to vacate its order of January 3, 1979, granting the motion of plaintiff Peter Andrew Notaras, a professional corporation, to disqualify Fierstein & Sturman Law Corporation, as counsel for defendants in superior court civil action number C 258621, petitioners herein, and enter in lieu thereof an order denying said motion and permitting defense counsel Fierstein & Sturman Law Corporation to continue representation of defendant petitioners within the ambit of rule 2-111(A)(5) of the Rules of Professional Conduct.

Lillie, Acting P. J., and Thompson, J., concurred.