[No. A012288. Sixth Dist. Mar. 29, 1985.]

MARUMAN INTEGRATED CIRCUITS, INC.,
Plaintiff and Appellant, v.
CONSORTIUM COMPANY et al., Defendants and Respondents.

444

## Counsel

Kenneth G. Griffin and Peter H. Strong for Plaintiff and Appellant.

Stephen S. Mayne, Raymond M. Taketa and Dinkelspiel, Donovan & Reder for Defendants and Respondents.

## Opinion

**PANELLI, P. J.**—Plaintiff appeals from the denial of its motion to disqualify counsel for defendant H. Dan Izumi. We find this appeal to be without merit and affirm.

### Facts

Plaintiff Toshiba Semiconductor Inc. (formerly known as Maruman Integrated Circuits, Inc.) is a corporation engaged in the development and manufacture of semiconductors, with its principal place of business in Sunnyvale, California. From 1975 to February 1980, defendant Izumi was the president, chief executive officer, director and shareholder of plaintiff corporation.

On March 7, 1980, plaintiff filed an action seeking a declaration that a long term lease purportedly executed on its behalf by defendant Izumi was

void and had no force or effect.[1] Plaintiff claimed defendant Izumi had no authority to execute the lease and that by entering into such an agreement he breached his fiduciary duty.[2] The law firm of Fenwick, Stone, Davis & West (Fenwick) was counsel for plaintiff in this action. Defendant Izumi retained the law firm of Dinkelspiel, Donovan and Reder (Dinkelspiel) to represent him in the matter.

From 1975 to 1980, G. Tipton Canty (Canty) was employed by plaintiff corporation. In April 1980 she terminated her employment and went to work for defendant Izumi. At the time of her departure from plaintiff, she was an administrator and assistant to the corporate secretary.

In September and October 1981 plaintiff deposed Canty. At the depositions Canty was represented by the Dinkelspiel law firm. In response to plaintiff's questions, she stated that she had dealings with attorneys from the Fenwick law firm during the course of her employment with plaintiff. She specifically identified five Fenwick attorneys with whom she had come into contact. Canty further stated that after the termination of her employment with plaintiff, she spoke with the Dinkelspiel firm two or three times concerning her prior conversations with attorneys in the Fenwick law firm. In addition, Ms. Canty revealed that she delivered two letters, written between the Fenwick law firm and plaintiff, to the Dinkelspiel law firm.[3]

On October 23, 1981, plaintiff filed its motion to disqualify the Dinkelspiel law firm, arguing that Canty had disclosed "confidential communications" between plaintiff and its attorneys. In support of its motion, plaintiff submitted a declaration by William Fenwick of the Fenwick law firm, stating that "G. Tipton Canty was personally involved in assisting my firm in the prosecution of this action on behalf of MIC during March and a portion of April 1980 and was a party to confidential communications between my firm and MIC."

In opposition to this motion, defendant Izumi argued (1) the communications were not "confidential" (2) plaintiff waived its privilege; and (3) as a matter of law disclosure by a lay employee did not require disqualification.

---

[1]In addition to Izumi, plaintiff named as defendants the developers of the facility contemplated by the lease. During the pendency of the instant appeal, the issues relating to these defendants were severed for purposes of trial.

[2]We do not set out the specific facts underlying this dispute because they are not relevant to the resolution of the instant appeal.

[3]At the deposition, she explained that while she worked for plaintiff she regularly took documents out of the office to work on at home. Although she returned most of the documents to the office some of them were inadvertently kept at home. Among these documents were the two letters written between the Fenwick law firm and plaintiff.

In support of the waiver argument defendant submitted a declaration from Steven Mayen, an attorney in the Dinkelspiel law firm. Mayen stated that in October 1981 he deposed Donald Davis, an attorney in the Fenwick law firm. Before the deposition, he entered into a stipulation with the Fenwick law firm that certain subjects within the attorney-client privilege would be waived.[4] The scope of this waiver included all matters otherwise subject to the privilege but excluding any settlement discussions, litigation strategy and factual developments occurring subsequent to February 29, 1980.

The disqualification motion was heard on November 3, 1981, one day before trial was scheduled to commence. The trial court denied the motion. In reaching this conclusion, the court stated: "I don't think there is any merit in your motion. I think this is just some picky point you picked up at the last minute to delay the trial, so I am going to deny your motion."

## *Discussion*

■ Claiming that Canty disclosed confidential communications between plaintiff and its attorneys, plaintiff contends the lower court abused its discretion in failing to disqualify the Dinkelspiel law firm from continued representation of defendant. We disagree.

■ It is the obligation of every attorney in this state "to maintain inviolate the confidence, and at every peril to himself, to preserve the secrets of his clients." (Bus. & Prof. Code, § 6068, subd. (e); *In re Charles L.* (1976) 63 Cal.App.3d 760, 763 [132 Cal.Rptr. 840].) In implementing this duty, it is well established that when confidential communications are obtained in the course of an attorney-client relationship, the client can prevent the attorney from using this information by representing an adverse party. (*Graphic Process Co.* v. *Superior Court* (1979) 95 Cal.App.3d 43, 53 [156 Cal.Rptr. 841].) However, it is the general rule that before this rule may be invoked to disqualify an attorney, there must have been an attorney-client relationship between the complaining party and the attorney during which the confidential information was imparted. (*Cooke* v. *Superior Court* (1978) 83 Cal.App.3d 582, 590 [147 Cal.Rptr. 915]; *Earl Scheib, Inc.* v. *Superior Court* (1967) 253 Cal.App.2d 703, 707 [61 Cal.Rptr. 386]; *In re Charles L., supra,* at p. 763.)

■ In *Cooke* v. *Superior Court, supra,* 83 Cal.3d 582 the court declined to extend the general rule to the situation where confidential infor-

---

[4]The reason for the waiver was that the Fenwick law firm anticipated presenting testimony from Mr. Davis at trial.

mation is communicated by a third party, outside the attorney-client relationship. In that case, a dissolution proceeding, the family butler eavesdropped on a conversation between the husband and his attorneys. (*Id., at* p. 586.) He also obtained copies of the husband's legal documents relating to the upcoming property settlement. (*Ibid.*) The butler subsequently sent this information to the wife who in turn delivered it to her attorney. (*Ibid.*) The husband argued the trial court erred in refusing to disqualify the wife's attorney due to his receipt of the confidential information imparted during an attorney-client relationship. (*Ibid.*)

In rejecting the husband's contention, the court stated: "The issue before us is simply whether exposure of an attorney to confidential and privileged information requires, as a matter of law, the disqualification of that attorney and his associates. We have found no cases, and we are cited to none, that establish so broad a rule. We have examined the cases wherein trial counsel was disqualified because of exposure to confidential or privileged information. In each of those cases, the attorney sought to be disqualified had been in a confidential relationship as an attorney for the party seeking the disqualification or the attorney had been in such a relationship to another attorney with whom the confidential relationship had existed that there existed a rational suspicion that the confidentially acquired information might have been passed along to the trial attorney." (*Cooke* v. *Superior Court, supra,* 83 Cal.App.3d at p. 590, fn. omitted.) The *Cooke* court concluded "In short, we know of no case where disqualification of an attorney or his firm was imposed purely as a punitive or disciplinary measure, and where there was no prior representation or confidential professional relationship between the complaining party and the attorney or law firm who sought to be disqualified." (*Id.,* at p. 592.)

In addition, the *Cooke* court found the policies underlying the rule protecting confidential communications did not warrant an extension of the rule. The rule is designed to protect "a relationship of confidence and entrustment" between client and attorney. (*Cooke* v. *Superior Court, supra,* at p. 591; accord *Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614 [120 Cal.Rptr. 253]; *Graphic Process Co.* v. *Superior Court, supra,* 95 Cal.App.3d 43, 53.) " '[A] client should be encouraged to reveal to his attorney all possible pertinent information . . . . A client should not fear that confidences conveyed to his attorney in one action will return to haunt him in a later one.' " (*Cooke* v. *Superior Court, supra,* at p. 591, quoting *Richardson* v. *Hamilton International Corporation* (3d Cir. 1972) 469 F.2d 1382, 1384.) ██ Therefore, "it is confidences acquired in the course of an attorney-client relationship which are protected by preventing the re-

cipient of those confidences from representing an adverse party." (*Cooke v. Superior Court, supra,* at p. 591.)

We find the reasoning in *Cooke* to be both reasonable and persuasive. We believe it is fully applicable to the instant case. Here, Canty dealt with Fenwick attorneys during the course of her employment. After her employment ended, she spoke with the Dinkelspiel law firm two or three times about her prior conversations with Fenwick attorneys. However, here, as in *Cooke,* the communications at issue were not acquired by the Dinkelspiel law firm during the course of an attorney-client relationship with plaintiff. There was no prior representation of plaintiff by the Dinkelspiel firm. Plaintiff cannot complain that the Dinkelspiel firm breached its duty to maintain its confidences, where the attorney-client privilege never existed between them.

Notwithstanding *Cooke,* appellant argues there is ample authority for requiring disqualification of an attorney despite the absence of prior representation. For this contention appellant cites *Hull* v. *Celanese Corporation* (2d Cir. 1975) 513 F.2d 568; *Comden* v. *Superior Court* (1978) 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562]; *People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164]; *William H. Raley Co.* v. *Superior Court* (1983) 149 Cal.App.3d 1042 [197 Cal.Rptr. 232].) However, because these cases are clearly factually distinguishable we find plaintiff's reliance on them to be misplaced.

In *Hull* v. *Celanese Corporation, supra,* 513 F.2d 568 an employee sued Celanese Corporation alleging sex discrimination. An attorney for the corporate legal staff of Celanese left the employ of Celanese and subsequently retained the same law firm to represent her. Thereafter, the employee-attorney sought to join the suit as an intervener. (*Id.,* at p. 569.) Holding the plaintiff's law firm disqualified, the court reasoned there was a possibility that confidential information imparted by defendant corporation to a former member of its *legal staff* would be divulged. (*Id.,* at p. 572.) In reaching this conclusion, the court recognized the unique factual context presented in the case and specifically warned "[t]he scope of this opinion must, of necessity, be confined to the facts presented and *not read as a broad brush approach to disqualification.*" (*Ibid.,* italics added.)

It is our opinion the facts critical to the *Hull* court's decision are absent in the instant case. Here, the former employee was not an attorney and therefore was never in an attorney-client relationship with her former employer. Therefore, unlike the situation in *Hull,* the possibility that information conveyed within a former attorney-client relationship was never

present. (See *Cooke* v. *Superior Court, supra,* 83 Cal.App.3d at pp. 590-591.) The *Hull* decision is limited to its peculiar fact situation.

The other cases cited by plaintiff are also inapposite because they do not involve the disclosure of confidential communications. For example, in *Comden* v. *Superior Court, supra,* 20 Cal.3d 906 the court ordered disqualification of a law firm after concluding a member of the firm would be called as a witness. The court based its determination on an examination of the purposes underlying rule 2-111(A)(4): "[a]n attorney who attempts to be both an advocate and witness impairs his credibility as a witness and diminishes his effectiveness as advocate." (*Comden* v. *Superior Court, supra,* at p. 912; Cal. Rules of Professional Conduct, rule 2-111(A)(4).) In *Comden,* unlike the instant case, whether the law firm had previously represented the complaining party was clearly irrelevant. (See also *People* v. *Superior Court (Greer), supra,* 19 Cal.3d 255 [disqualifying entire prosecutors office because of possibility of prosecutorial conflict of interest]; *William H. Raley Co.* v. *Superior Court, supra,* 149 Cal.App.3d 1042 [upholding disqualification based on the vicarious disqualification rule, 5-102(B)].) Therefore, the cases cited by plaintiff do not support disqualification in the present case. (See *Cooke, supra,* 83 Cal.App.3d at p. 590.)

Appellant additionally asserts that the lower court's decision cannot be upheld because the court denied the motion on improper grounds: i.e., that (1) plaintiff had not shown what communications had been disclosed and (2) the motion was made shortly before trial. We find this contention to be without merit.

 It is well settled that a lower court decision will not be overturned merely because it is given for a wrong reason. " 'If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citation.]" (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) It is equally well established that "[a]bsent an abuse of discretion, a trial court's decision in a disqualification proceeding will not be disturbed on appeal." (*William H. Raley Co.* v. *Superior Court, supra,* 149 Cal.App.3d 1048; see also *People* v. *Superior Court (Greer), supra,* 19 Cal.3d 255.) Moreover, in exercising this discretion, the judge may properly consider the possibility that the party brought the disqualification motion as a tactical device to delay litigation.[5] (*Comden*

---

[5]*Earl Scheib, Inc.* v. *Superior Court, supra,* 253 Cal.App.2d 703, a case cited by plaintiff, does not hold otherwise. In that case, the trial court denied a disqualification motion on the basis of prejudicial delay in bringing the motion. The appellate court reversed stating that it is abuse of discretion to deny the motion *solely* on grounds of timeliness and then remanded the case so the trial court could consider the motion on the merits.

v. *Superior Court, supra,* 20 Cal.3d at p. 915; *William H. Raley* v. *Superior Court, supra,* at p. 1048, *White* v. *Superior Court* (1979) 98 Cal.App.3d 51, 55 [159 Cal.Rptr. 278].) "It would be naive not to recognize the motion to disqualify opposing counsel is frequently a tactical device to delay litigation. [Citation.] '[J]udicial scrutiny [is required] to prevent literalism from possibily overcoming substantial justice to the parties.' " (*Comden* v. *Superior Court, supra,* at p. 915.)

Applying these principles to the instant case, and for the reasons previously stated, it is our opinion that the trial court's order was correct on the merits. Here the court did consider the motion on the merits and did not deny it solely because plaintiff refused to reveal the contents of the alleged communications at issue. Moreover, the court properly took into consideration the possibility that plaintiff brought the motion as a tactical device to delay the trial when it was heard the day before the trial was to commence.[6] Accordingly, we find the trial court properly exercised its discretion in denying the motion.[7]

The judgment is affirmed.

Agliano, J., and Brauer, J., concurred.

A petition for a rehearing was denied April 18, 1985, and appellant's petition for review by the Supreme Court was denied June 19, 1985.

---

[6]At the hearing, the court observed "this case involves people from Oregon and Toyko, and I assume they are all here in San Jose now ready for the trial and you come in the day before and want me to disqualify the attorney for one side. Why did you wait [a year and a half]."

[7]At oral argument, appellant cited the case of *American Pro. Ins.* v. *MGM Grand Hotel* (9th Cir. 1984). Our previous opinion mentioned appellant's reference to the *MGM Grand* case. This case has now been withdrawn from the bound volume, upon the request of the court. Accordingly, at present, the opinion is no longer extant as authority for appellant's position.