Opinion
 

 RYLAARSDAM, J.
 

 The law firm of Smith, Smith & Kring, and Attorneys Stuart Smith, Gregory Brown and Jeffrey Marquart (collectively SS&K) petitioned to vacate respondent superior court’s order recusing the law firm of Haight, Brown & Bonesteel (HB &B) from representing them in a legal malpractice action filed by real party in interest Grace Oliver. Initially, we denied the petition, but the Supreme Court granted review and transferred the matter to us with directions to issue an alternative writ. We complied and now issue a writ granting the petition, finding the admissible evidence does not support recusal of HB&B.
 

 Facts
 

 SS&K represented Oliver in an action for personal injuries arising from an automobile accident. HB&B represented the defendants in that lawsuit. During trial, Oliver agreed to settle the personal injury action in return for payment of $275,000, payable to her attorneys in trust, and execution of an agreement promising to indemnify the defendants in that action and HB&B.
 

 Subsequently, Oliver sued SS&K seeking damages on several theories, including legal malpractice, fraud and breach of fiduciary duty. Her first amended complaint alleges the actual value of the personal injury case far exceeded the settlement she received and that SS&K misled her into agreeing to the settlement. She also complains SS&K incurred excessive expenses in their preparation for the trial without her consent. In addition, she asserts the indemnity agreement allowed the settlement proceeds to be paid directly to SS&K and therefore allowed SS&K to distribute the proceeds without her knowledge or consent. HB&B was retained to represent SS&K in the malpractice suit.
 

 Oliver moved to recuse HB&B. She supported her motion by a declaration from Marc Vincent, her current attorney. Vincent declared that, before HB&B agreed to represent SS&K in the current action, he spoke with Peter Ezzell, a member of HB&B who represented the defendants in the personal injury action, and “made certain ex-parte communications regarding . . . Oliver to Mr. Ezzell and spoke about the indemnity agreement, distribution
 
 *577
 
 of funds, potential violation of the indemnity agreement, authorization to distribute funds, the insurance draft and other relevant matters.” His declaration further stated Ezzell spoke with another attorney named Brusavich “about relevant issues of the potential malpractice action.”
 

 In opposition to Oliver’s motion, SS&K submitted the declaration of Ezzell. He denied any member of HB&B “negotiated this matter to its conclusion,” claiming “[t]hat was done by Carola Cort at Insurance Company of the West pursuant to their protocol.” Ezzell also denied either sharing confidential information with SS&K, receiving any such information from that firm before the personal injury action was settled or participating in any ex parte communications which “would be precluded under the Rules of Professional Conduct.” In addition, Ezzell declared: “My clients ... in the underlying [personal injury] action have not waived the attomey/client privilege. I have not waived nor will I waive the attorney work product privilege. Therefore, communications of a confidential nature between myself [sz'c] and my clients will not be revealed at my deposition, nor will I reveal my thought processes, nor give opinions in the matter. [SS&K] are well aware of this and have waived any potential detriment to my not voicing opinions as to tactics, value, potential outcome, etc.”
 

 Ezzell claimed an indemnity agreement is standard whenever a client pays money directly to the trust account of opposing counsel. He asserted that HB&B took no part in the discussions of how to distribute or transfer funds held in SS&K’s trust account. Finally, while Ezzell admitted speaking with both Vincent and Brusavich, he declared, “I indicated to both that I did not believe there had been any legal malpractice” by SS&K, and “[i]n neither communication was there a request for privacy by Mr. Brusavich or Mr. Vincent, nor were there any admissions with regards to Ms. Oliver by any party to those conversations.”
 

 Discussion
 

 Evidence to be considered
 

 In an unverified document captioned “Statement of Facts,” Oliver purportedly presented additional facts to the trial court to support her recusal motion. By way of these unsupported and conclusory statements she argued “[t]he extensive nature of HB&B’s relationship with their clients on the underlying matter makes recusal necessary. HB&B must now testify as witnesses at deposition and trial.”
 

 In law and motion practice, counsel will frequently prepare a summary of facts in support of or in opposition to the motion. This may be part of a
 
 *578
 
 memorandum of points and authorities or consist of a separate statement of facts. Such a practice is useful as long as each fact mentioned is supported by admissible evidence and preferably if each such factual allegation is followed by an appropriate reference to the evidence accompanying the motion or opposition. However, absent such support in the evidence submitted, the court must disregard “facts” contained in an unverified statement.
 
 (Calcor Space Facility, Inc.
 
 v.
 
 Superior Court
 
 (1997) 53 Cal.App.4th 216, 224 [61 Cal.Rptr.2d 567].) The only evidence the trial court should have considered and which we may consider here is that contained in the declarations filed in support of and in opposition to the motion. The matters set forth in the unverified “Statement of Facts” and in memoranda of points and authorities are not evidence and cannot provide the basis for the granting of the motion. Likewise, we do not consider evidence contained in documents filed here which the parties failed to present as evidence to the trial court. (See
 
 Ganter
 
 v.
 
 Ganter
 
 (1952) 39 Cal.2d 272, 278 [246 P.2d 923];
 
 Loving & Evans
 
 v.
 
 Blick
 
 (1949) 33 Cal.2d 603, 614 [204 P.2d 23].)
 

 The attorney of record as a potential witness
 

 Where a lawyer representing a party in trial is also a witness during the trial, his or her effectiveness, both as a lawyer and as a witness, may be impaired in the eyes of the fact finder. Such disadvantage enures to the detriment of the party being represented by the lawyer serving such a dual function. In
 
 Comden
 
 v.
 
 Superior Court
 
 (1978) 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562], our Supreme Court upheld a trial court decision recusing an attorney solely on the basis that the attorney was a potential witness at the trial.
 
 (Id.
 
 at pp. 915-916.) However, that decision was based on former rule 2-111(A)(4) of the Rules of Professional Conduct, superseded in 1989, which, with exceptions not relevant here, declared that, if “a member of the State Bar knows or should know that he or a lawyer in his firm ought to be called as a witness on behalf of his client in litigation concerning the subject matter of such employment he shall withdraw from the conduct of the trial. . . .”
 

 After the decision in
 
 Comden,
 
 former rule 2-111(A)(4) of the Rules of Professional Conduct was amended to provide, “If upon or after undertaking employment, a member of the State Bar knows or should know that the member ought to be called as a witness on behalf of the member’s client in litigation concerning the subject matter of such employment, the member may continue employment only with the written consent of the client given after the client has been fully advised regarding the possible implications of such dual role as to the outcome of the client’s cause and has had a reasonable opportunity to seek the advice of independent counsel on the
 
 *579
 
 matter.” Based on this change, the court in
 
 Lyle
 
 v.
 
 Superior Court
 
 (1981) 122 Cal.App.3d 470 [175 Cal.Rptr. 918], recognized that
 
 Comden
 
 was no longer binding. “[T]he trial court under the new rule still has discretion to order withdrawal of counsel in instances where an attorney or a member of the attorney’s law firm ought to testify on behalf of his client. The amended rule, however, changes the emphasis which the trial court must place upon the competing interests, in reaching its decision. Under the amended rule .... the trial court, when balancing the several competing interests, should resolve the close case in favor of the client’s right to representation by an attorney of his or her choice and not as in
 
 Comden,
 
 in favor of complete withdrawal of the attorney. Under the present rule, if a party is willing to accept less effective counsel because of the attorney’s testifying, neither his opponent nor the trial court should be able to deny this choice to the party without a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process."
 
 {Id.
 
 at p. 482, fn. omitted; see also
 
 Reynolds
 
 v.
 
 Superior Court
 
 (1986) 177 Cal.App.3d 1021, 1028 [223 Cal.Rptr. 258].)
 

 In
 
 Maxwell
 
 v.
 
 Superior Court
 
 (1982) 30 Cal.3d 606, 619, fn. 9 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333], our Supreme Court also noted
 
 Comden’s
 
 weakened application: “[T]he State Bar has liberalized the rule on attorney-witnesses. Counsel need no longer withdraw from either a civil or criminal case if the client consents in writing to continued representation .... Thus
 
 the State Bar has concluded that a fully informed client’s right to chosen counsel outweighs potential conflict or threat to trial integrity posed by counsel’s appearance as witness.” (Id.
 
 at p. 619, fn. 9.) Present rule 5-210(C) of the Rules of Professional Conduct is substantially identical to the rule considered in
 
 Lyle
 
 and
 
 Maxwell
 
 providing, with certain exceptions not relevant here, that an attorney “shall not act as an advocate before a jury which will hear testimony from the member unless” counsel “has the informed, written consent of the client.”
 

 The parties do not dispute that HB&B obtained written consent from SS&K. Therefore, in applying the current rule, we must ask, based on the evidence supplied to the trial court, was there “a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process[?]”
 
 (Lyle
 
 v.
 
 Superior Court, supra,
 
 122 Cal.App.3d at p. 482.)
 

 Will there be detriment to plaintiff?
 

 We can quickly dispose of any contention of detriment to plaintiff. Since we must disregard counsel’s conclusory allegations, there is no evidentiary showing HB&B obtained confidential information in any communications with Oliver’s former attorneys. As for SS&K, Oliver’s allegation
 
 *580
 
 of legal malpractice against that firm necessarily waives all claims of confidentiality as to them. (See Evid. Code, § 958;
 
 Schlumberger Limited
 
 v.
 
 Superior Court
 
 (1981) 115 Cal.App.3d 386, 392 [171 Cal.Rptr. 413].) Whether SS&K is represented by HB&B o:r by any other firm, the former will need to disclose any relevant communications between the members of their firm and Oliver, their former client, in order to defend the malpractice action.
 

 Was there a convincing demonstration of injury to the integrity of the judicial
 
 process?
 

 In balancing the several competing interests, we start with the proposition that “[t]he right of a party to be represented in litigation by the attorney of his or her choice is a significant right [citation] and ought not to be abrogated in the absence of some indication the integrity of the judicial process will otherwise be injured . , .
 
 (Johnson
 
 v.
 
 Superior Court
 
 (1984) 159 Cal.App.3d 573, 580 [205 Cal.Rptr. 605]; see also
 
 Comden
 
 v.
 
 Superior Court, supra,
 
 20 Cal.3d at pp. 917-918 (dis. opn. of Manuel, J.).)
 

 It appears the trial court disqualified HB&B simply by virtue of the fact members of the firm may be called to testify and found “that status . , . just not tolerable” because it failed “the smell test.” However, as we have noted, an attorney acting as both advocate and witness in a client’s case
 
 is
 
 tolerable. Rule 5-210 of the California Rules of Professional Conduct permits HB&B to act as both advocate and witness since the firm obtained SS&K’s consent and “the fact that the client has consented to the dual capacity must be given great weight.”
 
 (Reynolds
 
 v.
 
 Superior Court, supra, 177
 
 Cal.App.3d at p. 1028.)
 

 Furthermore, “the smell test” is not conson ant with the current state of the law. Although a court has discretion to recuse an attorney who may testify, in exercising that discretion, the court must weigh the competing interests of the parties against potential adverse effects on the integrity of the proceeding before it and “should resolve the close case in favor of the client’s right to representation by an attorney of his or her choice . . . .”
 
 (Lyle
 
 v.
 
 Superior Court, supra,
 
 122 Cal.App.3d at p. 482; see also
 
 Reynolds
 
 v.
 
 Superior Court, supra, 177
 
 Cal.App.3d at p. 1028.)
 

 First, the court must consider the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case.
 
 (Lyle
 
 v.
 
 Superior Court, supra,
 
 122 Cal.App.3d at p. 481;
 
 People
 
 ex rel.
 
 Younger
 
 v.
 
 Superior Court
 
 (1978) 86
 
 *581
 
 Cal.App.3d 180, 201 [150 Cal.Rptr. 156].) “[I]t must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney’s innocent client, who must bear the monetary and other costs of finding a replacement.”
 
 (Gregori
 
 v.
 
 Bank of America
 
 (1989) 207 Cal.App.3d 291, 300 [254 Cal.Rptr. 853].)
 

 Second, the court must consider the possibility counsel is using the motion to disqualify for purely tactical reasons.
 
 (Comden
 
 v.
 
 Superior Court, supra,
 
 20 Cal.3d at p. 915.) Should counsel freely be able to disqualify opposing counsel simply by calling them as witnesses, it would “pose the very threat to the integrity of the judicial process that [motions to disqualify] purport to prevent.”
 
 (Gregori
 
 v.
 
 Bank of America, supra,
 
 207 Cal.App.3d at pp. 300-301.) “ ‘After all, in cases that do not involve past representation [conflict cases] the attempt by an opposing party to disqualify the other side’s lawyer must be viewed as part of the tactics of an adversary proceeding.’ ”
 
 (Graphic Process Co.
 
 v.
 
 Superior Court
 
 (1979) 95 Cal.App.3d 43, 52, fn. 5 [156 Cal.Rptr. 841], quoting
 
 J. P. Foley & Co., Inc.
 
 v.
 
 Vanderbilt
 
 (2d Cir. 1975) 523 F.2d 1357, 1360.)
 

 Finally, “ ‘[Wjhenever an adversary declares his intent to call opposing counsel as a witness, prior to ordering disqualification of counsel, the court should determine whether counsel’s testimony is, in fact, genuinely needed.’ ”
 
 (Reynolds
 
 v.
 
 Superior Court, supra, 177
 
 Cal.App.3d at p. 1027, quoting
 
 Connell v. Clairol, Inc.
 
 (N.D.Ga. 1977) 440 F.Supp. 17, 18, fn. 1.) In determining the necessity of counsel’s testimony, the court should consider “the significance of the matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established.”
 
 (Comden
 
 v.
 
 Superior Court, supra,
 
 20 Cal.3d at p. 913;
 
 Graphic Process Co.
 
 v.
 
 Superior Court, supra,
 
 95 Cal.App.3d at p. 50.) The court should also consider whether it is the trial attorney or another member of his or her firm who will be the witness.
 

 Oliver provided no declarations to demonstrate which discoverable facts HB&B knows and how any testimony would be adverse to the integrity of the judicial process. Furthermore, there was no factual showing as to why testimony from HB&B is.necessary and unobtainable from other witnesses. Oliver claims testimony from HB&B regarding the indemnity agreement is necessary to show “why SS&K distributed funds without their client’s authority.” There is no evidence to show HB&B has any independent knowledge or reason to know whether such funds were, in fact, improperly distributed or, if so, why such distributions took place. Oliver also claims
 
 *582
 
 HB&B will need to testify as to their opinions regarding the underlying case but fails to show what relevant evidence the HB&B attorneys possess.
 

 In light of the importance the law places on clients’ ability to retain an attorney of their choice and waive any potential conflict, we hold that trial judges must indicate on the record they have considered the appropriate factors and make specific findings of fact when weighing the conflicting interests involved in recusal motions. (See
 
 Lyle
 
 v.
 
 Superior Court, supra,
 
 122 Cal.App.3d at pp. 482-483.) There is no indication from the record the trial court recognized the importance of SS&K’s waiver or considered the factors outlined above.
 

 Here, Oliver failed to provide an adequate evidentiary showing as to why HB&B must testify or how any testimony would be harmful to the integrity of the judicial process. “Speculative contentions of conflict of interest cannot justify disqualification of counsel.”
 
 (Castro
 
 v.
 
 Los Angeles County Bd. of Supervisors
 
 (1991) 232 Cal.App.3d 1432, 1442 [284 Cal.Rptr. 154].) Thus, failing “the smell test” is not enough to deny parties representation by the attorney of their choice. We find the trial court abused its discretion by recusing HB&B.
 

 Disposition
 

 The petition is granted. Let a writ of mandate issue directing the trial court to vacate its order recusing HB&B without prejudice to real party renewing her motion based upon an adequate factual showing.
 

 Sills, P. J., and Wallin, J., concurred.