Filed 11/23/15  Payan v. Superior Court CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FIROOZ PAYAN, | D067852 |
| Petitioner, | |
| v. | (Super. Ct. No. 37-2013-00078078-CU-BT-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| OVERLAND DIRECT, INC., et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING in mandate.  Eddie Sturgeon, Judge.  Petition granted.

Thornton~Koller, Audrey Powers Thornton; and H. Paul Kondrick for Petitioner.

No appearance for Respondent.

Law Offices of George Rikos and George Rikos for Real Parties in Interest.

"'The right of a party to be represented in litigation by the attorney of his or her

choice is a significant right [citation] and ought not to be abrogated in the absence of

some indication the integrity of the judicial process will be otherwise injured.'" (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 580.)

Here, the trial court granted a motion to disqualify attorney H. Paul Kondrick, counsel for Firooz Payan, although there is no evidence Kondrick represented any adverse party or inappropriately obtained confidential information. The trial court's one-sentence order disqualifying Kondrick contains no findings or analysis. For that reason alone it would have to be vacated. (*Smith, Smith & Kring v. Superior Court*, *supra*, 60 Cal.App.4th at p. 582.) Moreover, on this record, Kondrick's disqualification is unwarranted. Therefore, we grant Payan's petition for a writ of mandate directing the trial court to vacate its order disqualifying Kondrick and enter a new order denying the motion to disqualify Kondrick.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Petition's Allegations Are Deemed True*

After the trial court granted the motion to disqualify Kondrick, Payan filed a petition for a writ of mandate. We issued an order to show cause, stating that absent objection, the informal response by real party in interest, Overland Direct, Inc. (Overland), would be deemed its return to the order to show cause. Overland filed an objection, stating it intended to file a return, and later Overland filed a document entitled return/answer.

When the Court of Appeal issues an order to show cause, the real party in interest may file "a return by demurrer, verified answer, or both." (Cal. Rules of Court, rule 8.487(b)(1).) "The return must conform to the rules governing an answer in a civil

2

action, and the usual rules of pleading apply." (8 Witkin, Cal. Procedure (5th ed. 2008) Writs, § 195, p. 1099.)

Overland's return/answer is unverified and includes neither an answer nor a demurrer. Instead, Overland's return consists of a memorandum of points and authorities, in the style of an appellate brief.

Citing *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, Payan asserts Overland's failure to answer or demurrer requires the factual allegations in Payan's petition to be deemed true. Payan is correct. An attempted response that is not a demurrer or verified answer—for example, "'a document consisting only of a discussion of points and authorities—is *not* a "return" and is not effective to deny the facts alleged in the writ petition.'" (*Id.* at p. 372, fn. 5.) As a result, facts alleged in Payan's petition are accepted as true, comprising the facts stated below.

B. *Aurora Lends Money to Overland*

In 2007 Aurora Fidelity Trust Company, Ltd., and certain bondholders (Aurora) loaned Overland Direct (Israel) Ltd. approximately $25 million, which Overland-Israel invested in its wholly owned subsidiary, Overland Direct, Inc. (Overland).

C. *Overland Lends Money to Cartwright Termite and Pest Control, Inc. and Addisu Worku*

Overland used the $25 million to make real estate loans. Overland made one such loan to Cartwright Termite and Pest Control, Inc. (Cartwright), secured by Cartwright's real property in El Cajon, California. Overland made another secured real estate loan to Addisu Worku.

3

D.  *Overland Defaults and Is Sued by Aurora*

In 2010 Overland defaulted in its obligations to Aurora.  Aurora hired Dan Tepper to collect the debt from Overland.  Tepper manages Esola Capital Investment, LLC (Esola), a real estate management, financial, and collection business.  On Aurora's behalf, Esola retained a law firm, Krane & Smith, to sue Overland and its president, Doran Ezra (the *Aurora* action).  Attorney Mark E. Goodfriend is named as one of seven attorneys on Krane & Smith's letterhead.

Tepper contends that he advanced "hundreds of thousands of dollars" to collect the debt owed by Overland to Aurora.  To compensate Tepper for his services, Aurora assigned certain of its rights against Overland to Esola.

E.  *The Aurora Settlement*

The *Aurora* action settled.  As part of the settlement, Overland assigned certain assets to Esola, including the Cartwright and Worku notes and trust deeds.

At about the same time, to avoid being thrown into bankruptcy or incurring significant legal fees, Ezra agreed to relinquish control of Overland's business to Tepper. Ezra gave Tepper/Esola copies of Overland's financial documents and business records.

F.  *Worku Sues Overland*

After *Aurora* settled, Overland was sued by Worku to invalidate Overland's trust deed that secured the $1.3 million loan Worku obtained from Overland.  However, Esola now held the Worku note and trust deed, as Overland's assignee.

Esola hired attorney Mark E. Goodfriend to file a motion to intervene in the *Worku* action.  The caption of the intervention motion identifies Esola as "partial

4

Successor in Interest" to Overland. Elswhere, however, the motion states Esola acquired its rights "by [a]ssignment." Other pleadings Goodfriend filed in *Worku* also identified Esola as "partial Successor in Interest" to Overland.

G. *Cartwright Sues Esola*

Meanwhile, in November 2011 Esola began a nonjudicial foreclosure against the El Cajon property securing Cartwright's loan, which was in default. Esola asserted it held these rights as Overland's assignee from the *Aurora* settlement.

To stop the foreclosure, Cartwright sued Esola, Tepper, and others for wrongful foreclosure and other relief in a case entitled *Cartwright Termite & Pest Control, Inc., et al. v. Esola Capital Investment, LLC, et al.* (Super. Ct. San Diego County, 2011, No. 37-2011-00071216-CU-OR-EC.) Kondrick represented Esola and Tepper in this action (the *Cartwright* action) until he withdrew in October 2014.

H. *Esola Assigns Its Rights to Payan, Who Sues for Judicial Foreclosure*

In November 2012 Esola assigned its rights in the Cartwright loan and trust deed to Payan. In May 2013 Payan filed a judicial foreclosure action against Cartwright in a case entitled *Firooz Payan v. Cartwright Termite & Pest Control, Inc., et al.* (Super. Ct. San Diego County, 2013, No. 37-2013-00049616-CU-OR-CTL.) Kondrick represents Payan in this action (the *Payan* action).

I. *Overland Sues Esola, Tepper, and Payan*

In November 2013 Michael Cartwright purchased Overland for $15,000 through a sale in the bankruptcy court. The next month, Overland sued Esola, Tepper, and Payan for alleged fraud in the transfer of assets (including the Cartwright note and trust deed)

5

from Overland to Esola in the *Aurora* settlement. In the *Overland* action, which is the instant case, Kondrick represents Payan; until his disqualification, Goodfriend represented Esola and Tepper. The trial court coordinated *Cartwright, Payan,* and *Overland.*

J. *Motion To Disqualify Counsel*

In February 2015 Overland moved to disqualify (1) Kondrick from representing Payan and (2) Goodfriend from representing Esola and Tepper. Most of Overland's motion (12 out of 15 pages) was directed against Goodfriend. Ezra submitted a declaration stating that as Overland's president from September 2006 through November 2013 he consulted Goodfriend to obtain legal advice. Ezra declared he gave Goodfriend "confidential information regarding [Overland's] strategies, defenses, strengths and weaknesses as it related to . . . [a] lawsuit involv[ing] all of the properties and assets of [Overland]." In opposition, Goodfriend filed a declaration asserting, "I never met with Doron Ezra to consult with him or any of his companies."

Turning to Kondrick, Overland asserted "Kondrick has undoubtedly obtained confidential information from at least three sources which warrant disqualification." These alleged sources are: (1) Kondrick's prior representation of Esola; (2) Kondrick's representation of Tepper; and (3) Kondrick's joint representation of Esola and Tepper with Mark Goodfriend.

Overland's theory was that Kondrick must be presumed to have obtained Overland's confidential information because Kondrick represented Esola in the *Cartwright* litigation while Esola was representing itself to be the "partial Successor in

6

Interest" to Overland in the *Worku* litigation. Overland asserted this established an attorney-client relationship between Kondrick and Overland.

Overland also asserted Kondrick was "clearly . . . working in conjunction with Mark Goodfriend" as shown by cooperation between Kondrick and Goodfriend in filing a motion for summary adjudication. Overland ended its motion by stating that "a mere appearance of impropriety is all that is required" to disqualify counsel.[1]

In opposition, Kondrick filed a declaration asserting he never had an attorney-client relationship with Overland or Ezra. Moreover, despite Goodfriend's characterization of Esola in the *Worku* litigation as "partial Successor in Interest" to Overland, Kondrick asserted Esola was not a successor in interest. Rather, Esola was an *assignee* of Overland's rights in certain assets.[2]

Additionally, Kondrick stated any communications between him and Goodfriend were privileged by the "joint defense" privilege[3]—and in any event, he and Goodfriend "had no discussions whatsoever insofar as his participation in the Worku-Overland lawsuit . . . ." Kondrick also declared he received no confidential documents or information from Overland.

---

[1] This is a misstatement of law. In California, an "appearance of impropriety . . . is not a sufficient ground for disqualification of an attorney." (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 471.)

[2] At the hearing on the disqualification motion, Kondrick remarked, "Nobody in their right mind wants to be the successor in interest to Overland. . . . There are millions of dollars in judgments against that corporation . . . ."

[3] This is a misstatement of law. "California has no joint-defense privilege." (*Citizens for Ceres v. Superior Court* (2013) 217 Cal.App.4th 889, 900.)

7

Payan also filed a declaration, stating he had worked closely with Kondrick for more than two years in the coordinated cases and has incurred more than $100,000 in attorney fees and costs. Kondrick estimated that if he were disqualified, new counsel representing Payan would need 600 to 800 hours to prepare for trial.

In reply, Overland's attorney stated, "There is more than sufficient evidence to demonstrate an appearance of impropriety and certainly disqualification is warranted to assure fairness in this judicial proceeding . . . ." Additionally, Overland's lawyer seized on Kondrick's assertion of a "joint defense privilege" with Goodfriend. Relying exclusively on a Ninth Circuit case, he asserted the joint defense privilege Kondrick invoked resulted in Kondrick having an implied attorney-client relationship with *Overland*:

> "The Ninth Circuit has held that entering into a joint defense agreement establishes an implied in fact attorney-client relationship between all defendants and attorneys who are parties to the agreement, thereby creating a disqualifying conflict . . . ."

Overland also argued Kondrick inappropriately possessed Overland's confidential information.

K. *The Trial Court's Ruling*

After hearing counsels' oral argument, the trial court granted Overland's motion to disqualify Goodfriend and took the matter under submission with respect to Kondrick. Later the same day, the court entered a minute order granting the motion to disqualify Kondrick.

8

L. *Payan's Writ Petition*

Payan filed a petition for a writ of mandate, directing the trial court to vacate its order granting Overland's motion to disqualify Kondrick and to enter a new order denying the motion. We issued an order to show cause and issued a stay.

Esola and Tepper did not file a writ petition to challenge the order disqualifying Goodfriend. Therefore, we do not consider and express no opinion on the trial court's order disqualifying Goodfriend.

DISCUSSION

I. *PROPRIETY OF WRIT RELIEF*

An order granting an attorney disqualification motion is both directly appealable and reviewable by writ petition in the reviewing court's discretion. (*Sharp v. Next Entertainment, Inc.* (2008) 163 Cal.App.4th 410, 424, fn. 7; *Apple Computer, Inc. v. Superior Court* (2005) 126 Cal.App.4th 1253, 1263–1264.) "'[I]t must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement.'" (*Smith, Smith & Kring v. Superior Court*, *supra*, 60 Cal.App.4th at p. 581.) Because the trial court's order deprives petitioner of the important right to counsel of his choice, mandate is an appropriate remedy to restore the right if the disqualification is improper.

II. *THE STANDARD OF REVIEW*

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee Oil*).) In exercising its discretion,

9

the court must be guided by the principle that "[t]he right of a party to be represented in litigation by the attorney of his or her choice is a significant right [citation] and ought not to be abrogated in the absence of some indication the integrity of the judicial process will otherwise be injured or the adverse party will otherwise be unfairly disadvantaged by the use of confidential information obtained as a result of the earlier representation." (*Johnson v. Superior Court* (1984) 159 Cal.App.3d 573, 580.) If the trial court resolves disputed factual issues and substantial evidence supports its factual findings, its legal conclusions based on those findings are reviewed for abuse of discretion. (*SpeeDee Oil* at p. 1144.)

"In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1144.) "In exercising its discretion, the trial court must make a reasoned judgment that complies with applicable legal principles and policies." (*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1403 (*Strasbourger*).) If the trial court's order "is not supported by sufficient reason, an order disqualifying an attorney and thereby depriving a litigant of the attorney of his choice constitutes an abuse of discretion that must be reversed . . . ." (*McPhearson v. Michaels Co.* (2002) 96 Cal.App.4th 843, 851.)[4]

---

[4]    Payan contends a de novo standard of review should apply. It is unnecessary to resolve that issue because the order must be vacated even under the abuse of discretion standard.

### III. *THE TRIAL COURT ABUSED ITS DISCRETION IN DISQUALIFYING KONDRICK*

A. *The Order Is Defective Because It Contains No Findings or Analysis*

The order granting Overland's motion to disqualify Kondrick is a single sentence containing no findings or legal analysis, stating:

> "After additional consideration, Plaintiff's motion to disqualify counsel for Defendant Payan [Mr. Kondrick] is GRANTED. [¶] A court may disqualify an attorney upon 'a showing that disqualification is required under professional standards governing avoidance of conflicts of interest or potential adverse use of confidential information.' (*Oaks* [*Management Corporation*] *v.* [*Superior Court, supra*] 145 Cal.App.4th [at p.] 462.)"

The order is deficient. "In light of the importance the law places on clients' ability to retain an attorney of their choice and waive any potential conflict, we hold that trial judges must indicate on the record they have considered the appropriate factors and make specific findings of fact when weighing the conflicting interests involved in recusal motions." (*Smith, Smith & Kring v. Superior Court*, *supra*, 60 Cal.App.4th at p. 582.)

In ordering Kondrick's disqualification, the trial court did not make any findings or identify any particular conflict of interest, confidential information, or adverse use of such information. Neither the minute order quoted above, nor the transcript of the hearing shows the trial court considered or weighed the relevant facts and legal factors in disqualifying Kondrick.

Overland contends the court complied with its obligation to state findings and reasons because at the hearing, the court stated it had "read everything again" and "made an outline, so I think I am really up to speed on this . . . ." However, saying one has "read

11

everything" and is "up to speed" does not assist a reviewing court in determining whether proper legal standards were applied to findings supported by substantial evidence. In other contexts, but equally applicable here, courts have noted that a statement of reasons "'acts as an inherent guard against careless decisions, insuring that the judge himself analyzes the problem and recognizes the grounds for his decision; and it aids in preserving public confidence in the decision-making process by helping to persuade the parties and the public that the decision-making is careful, reasoned and equitable.'" (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1770.)

The usual remedy for such error would be a remand for the trial court to either make the requisite findings or vacate its order. We decline to do so in this case, however, because as discussed next, the record does not support disqualifying Kondrick under the applicable legal principles and undisputed facts in this record.

B. *Kondrick Never Represented the Adverse Party, Overland*

Overland's motion to disqualify Kondrick was substantially based on rule 3-310 (E) of the Rules of Professional Conduct of the California State Bar, which provides:

> "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

"[R]ule 3-310 [of the Rules of Professional Conduct] controls conflicts of interest and disqualification motions *only in the context of attorney-client relationships*." (*Oaks Management Corporation v. Superior Court, supra,* 145 Cal.App.4th at p. 465.) ""Before an attorney may be disqualified from representing a party in litigation because

12

his representation of that party is adverse to the interest of a current or former client, it must first be established that the party seeking the attorney's disqualification was or is 'represented' by the attorney in a manner giving rise to an attorney-client relationship."'" (*Shen v. Miller* (2012) 212 Cal.App.4th 48, 56.)

There is no evidence Kondrick ever represented Overland. The two theories advanced by Overland: (1) an implied attorney-client relationship arising from Kondrick's assertion of a "joint defense privilege" with Goodfriend; and (2) an attorney-client relationship because Kondrick represented Esola (who claimed to be "partial Successor in Interest" to Overland in *Worku*) do not support Kondrick's disqualification.

There is no "joint defense privilege" under California law. (*Citizens for Ceres v. Superior Court*, *supra*, 217 Cal.App.4th at p. 900.) Rather, California follows a common-interest doctrine that allows disclosure between parties, without waiver of privileges, where the disclosure is necessary to accomplish the purpose for which legal advice was sought. (*Id.* at p. 914.) This common-interest doctrine "does *not* mean there is 'an expanded attorney-client relationship encompassing all parties and counsel who share a common interest.'" (*Ibid.*)

In the trial court, Overland's attorney cited *United States v. Henke* (9th Cir. 2000) 222 F.3d 633, 637 for the proposition that "entering into a joint defense agreement establishes an implied in fact attorney-client relationship between all defendants and attorneys who are parties to the agreement . . . ." However, in *Oxy Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, the appellate court rejected that

13

federal court's approach because creating a nonstatutory "joint defense privilege" is prohibited by the California Evidence Code. (*Id.* at pp. 888-889; Evid. Code, § 911.)

Overland's second theory—based on Esola's assertion it was Overland's "partial Successor in Interest"— fails under any analysis. If Esola were Overland's successor in interest, then Overland would have no right to confidentiality or attorney-client privilege to assert against Esola, because Esola, as Overland's successor, would be the current holder of the right to confidentiality or privilege. (See *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1139 [power to assert attorney-client privilege regarding confidential communications passes from predecessor trustee to successor trustee].)

Moreover, Esola is not and never has been Overland's successor in interest, despite Goodfriend's loose language characterizing it as such on captions in *Worku*. "'In order to be a "successor in interest," a party must continue to retain the same rights as original owner without change in ownership and there must be change in form only and not in substance, and transferee is not a "successor in interest.'"" (*California Concrete Co. v. Beverly Hills Savings & Loan Assn.* (1989) 215 Cal.App.3d 260, 272, italics omitted.) Unlike a successor in interest, an assignee is simply the recipient of a transfer of property, or of a right or interest in property, from one person or entity to another. Whereas a successor in interest becomes for legal purposes the entity it replaces, an assignee receives certain rights and no others under an agreement.

There is no evidence Esola was Overland's successor in interest. Overland still exists. Esola is a separate entity. According to *both* Ezra (Overland's former president)

14

and Cartwright (Overland's current president), Overland never had any successor in interest.

Esola is an assignee of certain assets formerly owned by Overland, which Esola allegedly acquired in settling the *Aurora* litigation. Indeed, even the pleadings Goodfriend filed that captioned Esola as "partial Successor in Interest" explained Esola's rights arose "by [a]ssignment."

In short, Goodfriend's erroneous characterization of Esola as "partial Successor in Interest" cannot create an attorney-client relationship where none exists.

C. *There Is No Evidence Kondrick Improperly Obtained Overland's Confidential Information*

Disqualification of an attorney may be proper even where there has been no prior attorney-client relationship. (*Oaks Management Corporation v. Superior Court*, *supra*, 145 Cal.App.4th at p. 464.) For example, "counsel may be disqualified where counsel has obtained the secrets of an adverse party in some other manner, such as where counsel's newly hired paralegal had access to the adversary's confidences while working for opposing counsel [citation], or where counsel obtained confidential information from an expert with whom opposing counsel had consulted [citations]. Disqualification is warranted in these cases . . . because the situation implicates the attorney's ethical duty to maintain the integrity of the judicial process." (*Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 219.)[5]

---

5    Although the parties and certain published opinions (e.g., *Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356 (*Great Lakes*)) discuss

15

Moreover, even without an attorney-client relationship, a party may successfully move to disqualify an attorney if "some sort of confidential or fiduciary relationship" exists between the attorney and the party moving for disqualification. (*Dino*, *supra*, 145 Cal.App.4th at p. 353.) And "where [an] ethical breach is '"manifest and glaring"' and so 'infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims' [citation], a nonclient might [be authorized] to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation." (*Great Lakes, supra*, 186 Cal.App.4th at p. 1357.) However, to assert such a claim, "the nonclient must meet stringent . . . requirements, that is, harm arising from a legally cognizable interest which is concrete and particularized, not hypothetical." (*Id.* at p. 1358.)

Overland contends that even in the absence of an attorney-client relationship, Kondrick should be disqualified because he improperly obtained confidential information "from Overland." Overland apparently concedes there is no evidence Kondrick obtained any confidential information directly from Overland. Nevertheless, Overland asserts Kondrick obtained Overland's confidential information from Esola and Tepper, who Kondrick represented "for almost three years." Moreover, although Kondrick solely

a nonclient's ability to disqualify an attorney as a matter of "standing," other courts have noted that characterization is incorrect because "standing refers to an aggrieved party's right to bring an action in the first instance, rather than an existing party's right to bring a motion seeking some sort of relief from the trial court." (*Dino v. Pelayo* (2007) 145 Cal.App.4th 347, 353, fn. 2.) Like the Court in *Dino*, we need not decide whether the issue is properly framed as one of standing; we review the record to determine whether Overland had a sufficient relationship with Kondrick to prevail on its motion to disqualify him.

represents Payan now, Overland argues Kondrick, Esola, Tepper, and Goodfriend are working together, as evidenced by Kondrick's attempt to file a motion for summary judgment on Esola and Tepper's behalf.

Overland's argument fails because even assuming everything Overland argues is true, the most it shows is Kondrick obtained information about Overland from Kondrick's own former clients, Esola and Tepper. "'Mere exposure to the confidences of an adversary does not, standing alone, warrant disqualification.' [Citation]. 'Such a rule would nullify a party's right to representation by chosen counsel any time inadvertence or devious design put an adversary's confidences in an attorney's mailbox.'" (*Oaks Management Corporation v. Superior Court*, *supra*, 145 Cal.App.4th at p. 467.)

Where the attorney's client is the source of privileged or confidential information relating to the litigation, disqualification is not appropriate because (1) clients do not act inappropriately in providing information to their attorney; and (2) a client should not be expected to make distinctions between what can and cannot be told to the attorney at the risk of losing the attorney's services; and (3) disqualification would accomplish nothing because the client still has the information and may pass it on to new counsel, leaving the adversary in the same position. (*Roush v. Seagate Technology, LLC*, *supra,* 150 Cal.App.4th at pp. 219-220.)

There is no evidence Kondrick did anything improper, even if he obtained information about Overland from his client or former client, Esola. "The courts have recognized repeatedly that attorneys owe no duty of care to adversaries in litigation or to those with whom their clients deal at arm's length." (*Strasbourger*, *supra*, 69

17

Cal.App.4th at p. 1410.)  "'If the disclosure is made by the attorney's own client, disqualification is neither justified nor an effective remedy.'"  (*Ibid*.)

Moreover, there is another reason why disqualification is improper in this case. "'Since the purpose of a disqualification order must be prophylactic, not punitive, the significant question is whether there exists *a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court.*  Thus, disqualification is proper where, as a result of a prior representation or through improper means, there is a reasonable probability counsel has obtained information the court believes would likely *be used advantageously against an adverse party during the course of the litigation. . . .*  Disqualification is inappropriate . . . simply to punish a dereliction that will likely have *no substantial continuing effect on future judicial proceedings*."  (*Oaks Management Corporation v. Superior Court, supra,* 145 Cal.App.4th at p. 467.)

Here, when pressed by the trial court at the hearing on the motion to identify "exactly where the conflict is," and "what was communicated," and "what the prejudice is," Overland's attorney was unable to identify any specific confidential information Kondrick improperly obtained.  Instead, counsel talked generally about bank records and e-mails, concluding, "There are so many layers of overlapping conflicts, Your Honor, that it cannot stand."[6]

---

[6]     Overland's counsel stated, "But let me get to Overland's confidential communication.  I produced, as consistent with the *Oak Management* case, an email from Doran Ezra . . . that was produced in discovery by Mr. Kondrick's office, an email from

The party seeking disqualification of an attorney must show actual prejudice in the form of potential harm to that party. """Speculative contentions;"" concerning such harm are insufficient to justify disqualification. (*Oaks Management Corporation v. Superior Court*, *supra*, 145 Cal.App.4th at p. 471.) Instead, """[s]pecific facts must point to a marked danger that the perceived evil . . . will result."" (*Ibid*.)

Where, as here, there has not been a prior representation, cases in which courts have concluded that an attorney must be disqualified have turned on findings of a clear, specific conflict, such as a finding that "the attorney's positions with the bank placed his firm on both sides of the lawsuit" (*Oaks Management Corporation v. Superior Court, supra,* 145 Cal.App.4th at p. 465, citing *William H. Raley Co. v. Superior Court* (1983) 149 Cal.App.3d 1042, 1044–1045); or that the opposing attorney and his firm had represented the insurance underwriter of the parent corporation of the moving party, a wholly owned subsidiary, and were "deeply involved" in all aspects of the litigation of the moving party's cases (*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, 235–236). In sharp contrast here, Overland's contentions concerning Kondrick's possession and potential use in this litigation of relevant confidential information from Overland are stated in the most general and speculative terms.

---

Mr. Ezra, containing Overland Direct, Inc.'s bank records to . . . Daniel Tepper, cc to Mark Smith of Krane & Smith, and then Mark Goodfriend. So, that's one prejudice."

DISPOSITION

Let a writ issue directing the superior court to vacate the order granting the motion to disqualify Kondrick and enter an order denying the motion to disqualify Kondrick. The stay issued by this Court on April 22, 2015, is vacated. Costs are awarded to Payan.


                                                                        NARES, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.

20