Filed 8/7/24  Kaucher v. Remedy Law Group CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| ELLIE KAUCHER, | B331055 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV27319) |
| v. | |
| REMEDY LAW GROUP, LLP, et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge.  Affirmed.

Yee & Associates, Steven R. Yee and Karlfeldt Su for Defendants and Appellants.

Browning|Hocker and Robert N. Hocker for Plaintiff and Respondent.

_____

Remedy Law Group, Andranik Tsarukyan, and Armen Zenjiryan (Remedy) are being sued by plaintiff Ellie Kaucher for malpractice, fraud, and breach of fiduciary duty. Remedy moved to disqualify opposing counsel Robert Hocker. Citing rule 3.7 of the Rules of Professional Conduct (rule 3.7), Remedy said it intends to call Hocker as a witness at trial.[1]

The trial court did not abuse its discretion by denying Remedy's motion to disqualify opposing counsel. Kaucher consented to have Hocker as her advocate, even if he testifies at trial. (Rule 3.7(a)(3).) Her decision must be honored because there is no showing of detriment to Remedy or potential injury to the integrity of the judicial process. Remedy did not show that Hocker's testimony is genuinely needed. We affirm.

## FACTS AND PROCEDURAL HISTORY
### Allegations in Kaucher's Complaint

Kaucher was a provost at Phillips Graduate University (PGU). In 2017, she was terminated in retaliation for disclosing an illegal scheme to PGU's directors. PGU also retaliated against two coworkers who supported Kaucher. Kaucher hired counsel to sue PGU for wrongful termination.

Though Kaucher was represented by counsel, Remedy solicited her to use its services. When she questioned its plan to represent her and her coworkers concurrently, Remedy denied

---

[1] Rule 3.7(a) reads: "A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: [¶] (1) the lawyer's testimony relates to an uncontested issue or matter; [¶] (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) the lawyer has obtained informed written consent from the client."

any conflict of interest. Kaucher fired her attorney and hired Remedy in 2018.

Remedy received a copy of PGU's insurance policy, which had a $1 million liability limit. It was a "depleting" or "burning limits" policy.[2] Remedy knew or should have known the importance of making a policy limits demand for Kaucher as soon as possible, given the nature of the insurance and PGU's financial difficulties.

In 2019, Remedy demanded $1 million from PGU. At a settlement conference, PGU offered $500,000; Remedy advised Kaucher to reject the offer, saying her case was worth far more. Afterward, Remedy filed whistleblower complaints for Kaucher's coworkers without informing her of the conflict of interest between them. In 2020, Remedy withdrew from representing Kaucher and her coworkers.

With Robert Hocker as counsel, Kaucher filed this malpractice suit against Remedy in 2021. She conceded that the case would be stayed until the underlying lawsuit against PGU was completed.

Kaucher alleges that she was harmed because (1) she lost competent counsel she initially retained after Remedy misrepresented that there was no conflict of interest between her and her coworkers; (2) she lost the ability to make an effective policy limits demand; (3) she lost the opportunity to secure $500,000 at the settlement conference; (4) PGU's insurance was

---

[2] In a burning limits policy, "the indemnification limit is reduced dollar for dollar by defense costs until zero is reached and the duty to indemnify and the duty to defend are then terminated." (*Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 76, fn. 29.)

3

depleted by defense costs; and (5) she was unable to retain new counsel owing to liens on her recovery.

## Remedy's Motion to Disqualify Counsel

Remedy sought to disqualify Hocker as Kaucher's attorney. Remedy wrote that Hocker will be called as a witness and demanded that he "recuse himself as plaintiff's counsel." Hocker was Kaucher's counsel in both the underlying PGU action and this malpractice suit.

In response to Remedy's demands, Kaucher consented in November 2021 to substitute The Nalu Law Firm (Nalu) as counsel in this action. In October 2022, Hocker settled the underlying PGU action. After the settlement, Nalu associated Hocker as cocounsel for Kaucher in this case. Remedy again demanded that Hocker withdraw, reminding him that he will be called as a witness at trial. Hocker refused to withdraw.

In support of its motion to disqualify opposing counsel, Remedy pointed to the court's authority to control persons connected to the judicial proceeding. It cited rule 3.7 as authority that Hocker cannot advocate at trial before a jury that will hear testimony from him. Remedy noted that the PGU settlement is subject to unresolved attorney liens, including a lien filed by Remedy.

Remedy wrote that Hocker is "a necessary witness." He can testify about Remedy's alleged failure to make a policy limit demand on PGU; Kaucher's difficulty in finding new counsel to take over her case against PGU; and his own 2022 settlement demand on PGU while representing Kaucher. Remedy claimed that Kaucher will not be prejudiced if Hocker is disqualified.

4

## Kaucher's Opposition

Kaucher responded that Hocker should not be disqualified. She consented to his representation; there is no genuine need for his testimony; the motion to disqualify is purely tactical; and she has a strong interest in having counsel of her choice. Applicable law allows a client to waive a conflict when an attorney acts as both advocate and witness.

Kaucher declared that she was unable to find replacement counsel in the underlying lawsuit because Remedy would not waive its lien on her recovery. She retained Hocker to pursue a malpractice claim against Remedy; he reluctantly agreed to work on the underlying PGU action if Kaucher waived any potential conflict if he must testify in the malpractice action.

Hocker declared that Remedy made a $1 million settlement demand 10 months after Kaucher sued PGU. By then, PGU's insurance was substantially depleted. When Hocker started to work on the case, only $100,000 remained on the policy, which says on its face that claims "shall be reduced or totally exhausted by payment of defense expenses." Remedy conceded in discovery that it was unaware of a conflict between Kaucher and her coworkers.[3]

Hocker agreed to represent Kaucher in the PGU action when she was unable to hire other counsel because Remedy asserted a lien on her recovery. Kaucher agreed to waive any conflict. Nalu represented Kaucher while the PGU action was pending, but never intended to be trial counsel. Hocker settled

---

[3] Kaucher notes that when an attorney has multiple clients all competing for a limited pool of funds from one source, "conflict is self-evident." (*Bridgepoint Construction Services, Inc. v. Newton* (2018) 26 Cal.App.5th 966, 968.)

5

Kaucher's case for less than $100,000, the amount remaining on PGU's insurance. He does not believe his testimony is needed at trial. There is no dispute about the PGU settlement, which can be described at trial by Kaucher or by PGU's counsel, and Kaucher can testify about her difficulty in retaining new counsel, as can the lawyers who rejected her case.

### Remedy's Reply

Remedy asserted that Hocker must testify why he did not make a settlement demand on PGU as soon as he was retained. He became Kaucher's counsel in October 2021 but did not make a settlement demand until August 2022. Remedy denied trying to " 'kill' " Kaucher's malpractice suit by disqualifying Hocker.

### The Trial Court's Ruling

The court acknowledged its inherent power and discretion to disqualify attorneys in a proceeding, even if the client consents to have counsel be both advocate and witness. It wrote that a client's informed consent must be honored absent a convincing showing of detriment to the opponent or to the integrity of the judicial process.

Even if Hocker testifies at trial about his settlement demand, Remedy offered no convincing evidence that it will be prejudiced or a jury will be confused. Merely stating that Hocker must testify does not justify disqualification. Kaucher will be prejudiced if Hocker is disqualified owing to his extensive knowledge of the case, and Nalu will withdraw if Hocker leaves the case. The court denied Remedy's motion to disqualify Hocker.

### DISCUSSION

#### 1. Appeal and Review

An order denying a motion to disqualify is appealable. (Code Civ. Proc., § 904.1, subd. (a)(6); *Meehan v. Hopps* (1955) 45

6

Cal.2d 213, 214–217; *People ex rel. Spitzer v. AWI Builders, Inc.* (2022) 80 Cal.App.5th 248, 255 [disqualification of counsel is akin to an injunction].) While the grant or denial of a motion to disqualify counsel is reviewed for abuse of discretion, the court's factual findings need only be supported by substantial evidence. (*Militello v. VFARM 1509* (2023) 89 Cal.App.5th 602, 612; *Lopez v. Lopez* (2022) 81 Cal.App.5th 412, 422 (*Lopez*).)

## 2. Standard for Disqualification

Courts can "control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (Code Civ. Proc., § 128, subd. (a)(5).)

When deciding disqualification motions, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145; *O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1124.) "[W]here an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1205.)

Remedy moved to disqualify Hocker under rule 3.7, which allows a lawyer to act as both advocate and witness if the client gives informed written consent. The parties agree, in their briefs, that courts consider the party's interest in being represented by counsel of choice; whether counsel is a necessary witness; and whether disqualification is sought for tactical reasons. (*Lopez, supra,* 81 Cal.App.5th at p. 424; *Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 581 [other witnesses

7

or documentary evidence may be used to independently establish facts]; *Graphic Process Co. v. Superior Court* (1979) 95 Cal.App.3d 43, 52 [parties cannot cause disqualification "simply by threatening to call the opposing attorney as a witness"].)

### 3. The Court Did Not Abuse Its Discretion

Remedy does not dispute that Kaucher gave informed written consent under rule 3.7. Her wish to have Hocker's representation governs unless Remedy can make "a ' "convincing demonstration of detriment [to itself] or injury to the integrity of the judicial process." ' " (*Lopez, supra,* 81 Cal.App.5th at p. 425; *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470, 482 (*Lyle*).) Remedy failed to make the necessary showing.

Remedy argued in its motion that it intends to call Hocker as a witness, but made no claim that his testimony will cause it cognizable injury or detriment. As the trial court wrote, "Defendants do not discuss prejudice to themselves at all." Remedy is left with the integrity of the judicial process as the basis for disqualification.[4]

Remedy claimed that "[i]t is essential that Hocker be recused in order to maintain the integrity of the judicial process." Remedy stated that it would ask Hocker to testify about his delay in making a settlement demand after becoming Kaucher's attorney in the PGU action in 2021. It also told the trial court that Hocker could testify about Remedy's misconduct; Kaucher's difficulty in retaining new counsel; and the settlement of the PGU action.

---

[4] On appeal, Remedy argues that if it is found liable, it is entitled to an offset for Hocker's delay in making a settlement demand. Remedy forfeited this claim by failing to raise it below.

8

Remedy did not explain *why* Hocker's testimony " ' " ' "is, in fact, genuinely needed." ' " ' " (*Lopez, supra,* 81 Cal.App.5th at p. 424.)  Experts can testify about the effect of Remedy's and Hocker's delays in making settlement demands, the dates of which are not in dispute.  Experts can also testify about the wisdom of Remedy's advice that Kaucher reject PGU's $500,000 settlement offer in 2019.  Kaucher will testify about her difficulty in retaining new counsel:  Hocker could offer only hearsay about interactions between Kaucher and the lawyers she interviewed.  PGU's attorney can testify about its insurance policy and settlement of the underlying action.

Even if Hocker were to testify, there is no "convincing demonstration of . . . injury to the integrity of the judicial process." (*Lyle, supra,* 122 Cal.App.3d at p. 482.)  Remedy did not explain why a jury would be confused, or how justice would be denied or public trust in the court would be undermined.  Though the trial court did not address Remedy's tactics, it implicitly found that Remedy seeks to disqualify opposing counsel to destroy Kaucher's malpractice suit against it.

On the other side of the equation, Kaucher will be prejudiced by losing Hocker, who filed the malpractice suit in 2021 and has litigated it for several years.  Requiring new counsel would cause " ' "duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case." ' " (*Lopez, supra,* 81 Cal.App.5th at p. 424.)  Though Nalu served as Kaucher's counsel while Hocker was settling the PGU action, Nalu had only a support role and has no intention of taking Kaucher's case to trial.

9

## CONCLUSION

The trial court's factual findings are supported by substantial evidence. Kaucher consented to have Hocker act as her counsel and potentially as a witness. Remedy did not present the trial court with facts showing prejudice if Hocker testifies. Remedy did not convincingly demonstrate any possible injury to the integrity of the judicial process. It is not genuinely necessary that Hocker testify on the topics raised by Remedy. Rule 3.7 allows Kaucher to consent to counsel's dual roles in this case. The court did not abuse its discretion by denying Remedy's motion to disqualify opposing counsel.

## DISPOSITION

The judgment is affirmed. Appellants must bear all costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

10