Filed 9/17/24  Hormigas v. Apartment Management Consultants CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| MARYLOURDES HORMIGAS et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>APARTMENT MANAGEMENT CONSULTANTS, LLC,<br><br>     Defendant and Respondent. | A167657<br><br>(Solano County<br>Super. Ct. No. FCS054927) |

Marylourdes Hormigas and Joe Castro (collectively, plaintiffs) filed a complaint against their former employer, Apartment Management Consultants, LLC (AMC) to recover: (1) civil penalties under the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.) for various Labor Code violations suffered by them personally (i.e., "individual" PAGA claims) and by other employees (i.e., "non-individual" PAGA claims), and (2) injunctive relief, restitution, and disgorgement of benefits under the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.) based on the same alleged Labor Code violations.  AMC moved to dismiss plaintiffs' non-individual PAGA claims, arguing that because plaintiffs' individual PAGA claims had been sent to arbitration in a separate action, plaintiffs lost standing to maintain their non-individual PAGA claims.  The trial court agreed, granted the motion, and dismissed this action in its entirety.

1

Plaintiffs appeal.  We conclude the trial court erred in granting the motion to dismiss and therefore reverse the dismissal order.

## BACKGROUND

### The General Setting and the Arbitration Agreements

AMC is a real estate asset and property management company.  One of the properties it manages is located in Fairfield, California.  In December 2018, AMC hired Hormigas as a community manager.  In January 2019, AMC hired Castro as a porter.

On February 13, 2019, and May 21, 2019, Castro and Hormigas, respectively, each signed a document entitled, "California Binding Arbitration Agreement" (hereafter "Agreements").  Both Agreements state in relevant part:

"This Agreement is entered into between [AMC] and the undersigned Employee.  Employee acknowledges that any controversy or claim arising out of or relating to Employee's employment with AMC shall be settled by final and binding arbitration . . . . [¶]

"1.    Any claim, dispute, and/or controversy that either party may have against the other shall be subject to this Agreement.  This includes, but is not necessarily limited to, claims related to compensation . . . .  The parties to this Agreement specifically agree that all claims under the California Labor Code, including, but not limited to, claims for overtime, unpaid wages, and claims involving meal and rest breaks shall be subject to this Agreement.  This Agreement also includes, but is not necessarily limited to, claims for unfair competition . . . . [¶] . . . [¶]

"3.    Employee and AMC agree to waive their right to a jury trial and their right to bring, maintain, participate in or receive money from any future class, representative or collective action, whether in court, arbitration or any

2

other proceeding . . . . [¶] . . . [¶]

"9.     If any term or portion of this Agreement shall, for any reason, be held to be invalid or enforceable or to be contrary to public policy or any law, then the remainder of this Agreement shall not be affected by such invalidity or unenforceability but shall remain in full force and effect, as if the invalid or unenforceable term or portion had not existed within the Agreement."

Hormigas resigned from her position at AMC in September 2019, and Castro resigned in February 2021.

**The Proceedings Below**

In June 2020, Hormigas filed in the Solano County Superior Court a complaint against AMC.[1]  On March 2, 2022, the first amended complaint (FAC) added Castro as a plaintiff.

The FAC was based primarily on PAGA, which authorizes any "aggrieved employee" to initiate a civil action against a former employer on behalf of himself or herself and other current or former employees to recover civil penalties for violations of the Labor Code ordinarily "assessed and collected by the Labor and Workforce Development Agency . . . ."  (Lab. Code, § 2699, subd. (a).)  As our Supreme Court has described, "An employee suing under PAGA 'does so as the proxy or agent of the state's labor law enforcement agencies.' [Citation.] . . .  Moreover, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations.  [Citation.]  Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action.  [Citations.]  'A PAGA representative action is therefore a type of qui tam action,' conforming to all

---

[1]     The complaint also named as a defendant DKD Property Management Company, which was dismissed from the lawsuit nearly six months later.

3

'traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation.' [Citation.] The 'government entity on whose behalf the plaintiff files suit is always the real party in interest.'" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*), italics omitted.)

In the FAC, plaintiffs, on behalf of themselves and "similarly situated Aggrieved Employees" of AMC, sought to recover civil penalties under PAGA for various violations of the Labor Code, including unpaid wages, unpaid overtime compensation, unpaid reimbursement of business expenses, skipped meal and rest breaks, and wage statement violations. Additionally, plaintiffs asserted a violation of the UCL and requested "injunctive relief, restitution, and disgorgement of all benefits Defendants have enjoyed from their violations of Labor Code and the other unfair, unlawful, or fraudulent practices alleged in this Complaint."

In April, AMC filed an answer.

In June, Hormigas and Castro each filed a complaint against AMC and others in a separate action in the Solano County Superior Court (*Hormigas v. DKD Property Management Company* (Super. Ct. Solano County, 2022, No. FCS058426)). Each plaintiff in his or her individual capacity alleged almost all of the same Labor Code and UCL violations as those asserted in the FAC. Plaintiffs sought damages and did not seek penalties under PAGA.[2]

On November 9, AMC filed what it styled a "Motion to Dismiss," accompanied by a memorandum of points and authorities; declarations of its Human Resources Director, Maria Carrillo, and its attorney, and exhibits

---

[2] AMC later filed a "Notice of Related Case" identifying case No. FCS058426, but the record does not show that this action and the separate action were ordered related. (See Cal. Rules of Court, rule 3.300.)

4

attached thereto; and a request for judicial notice of various documents. Carrillo's declaration attached copies of the Agreements.

AMC's motion to dismiss was based on the then-recent United States Supreme Court opinion in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*), which considered whether the FAA preempted certain holdings of the California Supreme Court in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*). *Iskanian*'s primary rule was that a pre-dispute categorical waiver of the right to bring an PAGA action in any forum (judicial or arbitral) is unenforceable as against California public policy. (*Iskanian*, *supra*, 59 Cal.4th at pp. 382–383.) This rule was left undisturbed in *Viking River*. (*Viking River*, *supra*, 596 U.S. at pp. 656–659.) However, *Viking River* held the FAA preempts *Iskanian*'s secondary rule that employers may not require employees to " 'split' " PAGA actions in a manner that puts individual and non-individual components of a PAGA claim into bifurcated proceedings. (*Viking River*, at p. 662, citing *Iskanian*, at p. 383.)[3]

---

[3] We clarify some terminology. In accordance with its usage in *Viking River,* we will refer to PAGA claims based on code violations personally suffered by a plaintiff as "individual" claims, and PAGA claims based on code violations suffered by employees other than the plaintiff as "non-individual" claims. In their moving papers below and appellate briefs, the parties refer to Hormigas's and Castro's complaints filed in case No. FCS058426 as their "individual complaints" or "individual actions," and their claims therein as their "individual claims." To avoid confusion with the individual/non-individual terminology used in the PAGA context, we will refrain from using the word "individual" when referring to the complaints or claims brought in case No. FCS058426, which, as noted, were not based on PAGA. Instead, we will refer to those claims or complaints as those brought in the "separate action." We also note that the parties sometimes use the term "representative" PAGA claims, which we understand to refer to PAGA claims based on code violations suffered by employees other than the plaintiffs, or "non-individual" claims.

*Viking River* then turned to the agreement before it, which required "arbitrat[ion] [of] any dispute arising out of [the plaintiff's] employment" and contained a waiver provision "providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action . . . ." (*Viking River*, *supra*, 596 U.S. at p. 647.) The agreement also included a "severability clause specifying that . . . if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.' " (*Ibid.*) The court relied on that clause in concluding the defendant was entitled to compel arbitration of the plaintiff's individual claims, even though the arbitration agreement was invalid as to the non-individual claims. (*Id.* at p. 662.)

"The remaining question" was "what the lower courts should have done with [the plaintiff's] non-individual claims." (*Viking River*, *supra*, 596 U.S. at p. 662.) *Viking River* interpreted PAGA's standing requirements and suggested that once a PAGA plaintiff is required to arbitrate his or her individual claim, his or her non-individual claim must be dismissed for lack of standing. (*Viking River*, at p. 663.)

In its motion, AMC argued that "Plaintiffs' Individual Claims Must Be Arbitrated And Their Non-Individual PAGA Claim Must Be Dismissed Pursuant to *Viking River*."

With respect to the individual claims, AMC did not specifically ask for an order compelling such claims to arbitration. Rather, AMC asserted that those claims "will be" sent to arbitration by virtue of the fact that it had filed motions to compel arbitration of plaintiffs' claims in the separate action. In so arguing, AMC apparently relied on two assumptions. The first was that its motions to compel arbitration in the separate action would be granted. The second assumption was that the non-PAGA claims in the separate action were legally the same as, or necessarily encompassed, the individual PAGA

6

claims in this case.

As for the non-individual claims, AMC argued—based on an apparent misunderstanding of *Viking River* and *Iskanian*—that plaintiffs "expressly waived" the right to assert such claims, citing the provision in the Agreements stating that "Employee and AMC agree to waive their right to a jury trial and their right to bring, maintain, participate in or receive money from any future class, representative or collective action, whether in court, arbitration or any other proceeding." Thus, in AMC's view, "the only claims Plaintiffs may pursue are those asserted on their own behalf."

Separately, AMC argued that the non-individual claims should be dismissed for lack of standing, following the example of *Viking River*: "Upon compelling Plaintiffs' individual claims to arbitration, Plaintiffs will no longer have standing to pursue non-individual PAGA claims for other employees," and, therefore, the "non-individual PAGA claims, the basis for this entire action, must be dismissed."

Next, AMC contended that the Agreements were not unconscionable and were thus enforceable. Lastly, AMC maintained it did "not waive its right to compel arbitration."

Plaintiffs opposed the motion. They argued the Agreements contained the type of "wholesale waiver" of PAGA claims held unenforceable in *Iskanian* and *Viking River*. Thus, plaintiffs disputed AMC's assertion that they had contractually waived their right to bring a representative PAGA action.

Plaintiffs acknowledged that *Viking River* concludes that individual claims can be compelled to arbitration if the parties have so agreed. Plaintiffs, however, argued that *Viking River* was not controlling on the interpretation of the PAGA standing requirements. Instead, plaintiffs urged

7

the trial court to follow *Kim*, *supra*, 9 Cal.5th 73, under which they claimed they had standing to pursue their non-individual claims even if their individual claims were to be arbitrated. Alternatively, plaintiffs requested that the trial court stay adjudication of AMC's motion to dismiss pending the California Supreme Court's decision in *Adolph v. Uber Technologies, Inc.*, review granted July 20, 2022, S274671, a case that would consider whether dismissal of non-individual claims is required when individual claims are ordered to arbitration.

AMC filed a reply to the opposition, disagreeing that the Agreements contained an invalid, wholesale waiver of PAGA claims. But even if they did, AMC asserted: "[T]he severability clause in [the] Arbitration Agreement[s] should be applied to divide the PAGA claim between arbitrable individual PAGA claims and nonarbitrable non-individual PAGA claims pursuant to *Viking River*. That requires Plaintiff[s'] individual claims (consistent with the Arbitration Agreement[s]) to proceed in arbitration[.]" AMC then reiterated that once plaintiffs' individual claims are compelled to arbitration—which, in a footnote, AMC indicated had occurred or suggested will occur[4]—plaintiffs no longer had standing to pursue their non-individual claims pursuant to *Viking River*. AMC added that *Viking River* was controlling on the issue of standing.

AMC's motion to dismiss came on for hearing on February 28, 2023, prior to which the trial court issued a tentative ruling granting the motion. After hearing arguments from the parties, the trial declined to stay the

---

[4]     Specifically, AMC stated "[it] ha[d] successfully compelled Castro's individual claims . . . in [case no. FC8058436]" to arbitration and that AMC's "unopposed motion to compel Hormigas['s] . . . claims to arbitration in [case no. FC8058436] [was] set to be heard on February 27, 2023." (Italics and boldface omitted.)

8

matter and adopted its tentative ruling, which stated, in pertinent part:

"In *Viking River Cruises* . . . , the U.S. Supreme Court held that when a representative plaintiff's individual PAGA claims are referred to arbitration, the representative plaintiff no longer has standing to maintain the non-individual PAGA claims in the representative action, and therefore, 'the correct course' is to dismiss the action. [Citation.].

"In the present case, the individual PAGA claims of the representative plaintiffs, HORMIGAS and CASTRO, have been referred to arbitration pursuant to an arbitration agreement that they each signed. Therefore, HORMIGAS and CASTRO no longer have standing to maintain this representative action.

"In their opposition, plaintiffs make several contentions that are either irrelevant or incorrect. The court need not determine the enforceability of plaintiffs' waiver of their right to bring a representative action, which is contained in the arbitration agreement, because the determinative issue on this motion is plaintiffs' lack of standing. The *Viking River* case, which clearly applies here, overturned previous California precedent, specifically, *lskanian* . . . , upon which plaintiffs rely. And contrary to plaintiffs' contentions, as U.S. Supreme Court precedent, this court is bound to follow the *Viking River* case, which specifically held that federal law regarding arbitration pre-empts California law regarding arbitration. (Italics added.)

"Cases cited by plaintiffs in their opposition, such as *Kim*[, *supra*,] 9 Cal.5th 73, precede the *Viking River* case, and/or are distinguishable from the facts of the present case . . . . [¶] Therefore, the court dismisses this action with prejudice in its entirety." (Italics added.)

On March 7, the trial court issued an order granting AMC's motion to dismiss and dismissing the action in its entirety with prejudice.

This appeal followed.[5]

## DISCUSSION

As framed by plaintiffs, the questions presented on appeal are "whether [they] have standing to pursue their representative PAGA claims given that their individual claims are compelled to arbitration" and, therefore, "whether dismissal of the case was appropriate"—legal questions subject to our de novo review.

As noted, at the time the parties filed their moving papers below, the California Supreme Court had before it a case that invited it to determine whether *Viking River*'s treatment of non-individual claims was consistent with a correct interpretation of PAGA. That case, *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*), was decided after plaintiffs filed this appeal. *Adolph* holds: "Where a plaintiff has brought a PAGA action with comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." (*Adolph, supra,* 14 Cal.5th at p. 1114.) *Adolph* disagreed with the contrary interpretation of California law enunciated by the United States Supreme Court in *Viking River*, which concluded that a PAGA plaintiff loses standing in that situation and thus his or her non-individual claims should be dismissed. (*Adolph, supra*, 14 Cal.5th at p. 1119, citing *Viking River, supra*, 596 U.S. at p. 663.)

---

[5]     No judgment was entered, but because the order dismissed this action in its entirety with prejudice, we agree with plaintiffs that the order may be treated as an appealable final judgment. (See *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 11 [order requiring compliance with administrative subpoenas was "final for purposes of appeal" because it did not "contemplate future proceedings nor otherwise indicate that it is not final"].)

Plaintiffs argue that *Adolph* is controlling on the interpretation of PAGA's standing requirements, that the trial court's determination they lacked standing to pursue their non-individual claims is erroneous under *Adolph,* and that the dismissal order thus must be reversed. AMC concedes these points. And we agree with the parties that the dismissal order must be reversed.

But there is more to the case than the question of standing. We find the error in the trial court's decision lies not only in its conclusion on the standing issue, but also in its overall analysis along the way to reaching its conclusion. Specifically, the trial court relied on the premise that plaintiffs' individual claims already had been ordered to arbitration, a premise upon which the parties also rely on appeal. We do not accept this premise.

The premise that "the individual PAGA claims of . . . plaintiffs . . . have been referred to arbitration" is factually unsupported. To begin with, the record does not show the trial court issued an order compelling arbitration of plaintiffs' individual claims.

Nor does the record support AMC's assertion below—adopted by the trial court—that those claims had been referred to arbitration by way of AMC's motions to compel arbitration in the separate action. As explained, in its motion to dismiss, AMC noted it had moved to compel arbitration of plaintiffs' claims in the separate action. AMC then argued: "*Viking River* confirms that Plaintiffs' individual claims are subject to arbitration. In this instance, their individual claims are addressed in separately filed complaints, rather than the instant FAC, but they will nevertheless be compelled to arbitration." In support, AMC submitted the declaration of its counsel, who stated that AMC had filed motions to compel arbitration in the separate action. Later in its reply papers, AMC represented that "[it] has successfully

11

compelled Castro's individual claims . . . in [case no. FC8058436]" and that AMC's "unopposed motion to compel Hormigas' . . . claims to arbitration in [case no. FC8058436] [was] set to be heard on February 27, 2023."  (Italics and boldface omitted.)

The above shows that AMC provided no evidence that its motions to compel arbitration in the separate action had been granted.  The only evidence that AMC presented on that point was the declaration of its attorney.  But all counsel said was that AMC had filed the motions; counsel did not indicate the rulings on the motions.  Although AMC in its reply papers stated that the motion as to Castro had been granted, and suggested that the motion as to Hormigas was likely to be granted, these statements were *not* evidence.  (See *Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 578 ["The only evidence the trial court should [consider] and which we may consider . . . is that contained in the declarations filed in support and in opposition of the motion.  The matters set forth in . . . memoranda of points and authorities are not evidence"].)  As such, the trial court had no evidence before it that plaintiffs' non-PAGA claims in the separate action had been ordered to arbitration.

But assuming arguendo they had been, it would not follow that the individual claims in this case would have been compelled to arbitration as well.  The parties apparently proceed under the assumption that for purposes of arbitration, the non-PAGA claims in the separate action are the same as, or necessarily encompass, the individual claims in this action, since both sets of claims are based on the same alleged Labor Code and UCL violations.  This assumption is incorrect.  As our Supreme Court explained, "A PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties.  An employee suing under PAGA 'does so as the

12

proxy or agent of the state's labor law enforcement agencies.' [Citation.] . . . Moreover, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. [Citation.] Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action." (*Kim*, *supra*, 9 Cal.5th at p. 81, italics omitted.) Thus, assuming the non-PAGA claims in the separate action had been ordered to arbitration, it does not necessarily follow that the arbitration would embrace the individual claims in this case.

In sum, we reject the premise of the trial court and the parties that plaintiffs' individual claims had been ordered to arbitration.

It appears from the trial court's ruling that because it relied on this premise, it did not believe it was necessary or relevant to independently interpret the Agreements and determine whether the Agreements are binding and contain a valid arbitration clause; whether the clause is enforceable; and whether plaintiffs' claims in the FAC are arbitrable. Thus, as best we can determine, the proper interpretation of the Agreements remains unresolved.

In the absence of an order compelling plaintiffs' individual claims to arbitration, we believe it was analytically flawed for the trial court to proceed to the standing issue. This is because—as *Adolph*, the appellate court cases cited therein, and *Viking River* illustrate—the question of a PAGA plaintiff's standing to pursue non-individual claims becomes relevant only after the individual claims are sent to arbitration. (See *Adolph*, *supra*, 14 Cal.5th at p. 1114 ["Where a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to

13

litigate claims on behalf of other employees under PAGA"]; *Seifu v. Lyft, Inc.* (2023) 89 Cal.App.5th 1129, 1134 ["[A] plaintiff is not stripped of standing to pursue nonindividual PAGA claims simply because his or her individual PAGA claim is compelled to arbitration"]; *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1291 ["[P]aring away the plaintiff's individual claims does not deprive the plaintiff of standing to pursue representative claims under PAGA"]; *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 792 ["[U]nder California law, Gregg is not stripped of standing to pursue his nonindividual claims in court simply because his individual claim must be arbitrated"]; *Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 134–135 ["Nickson has standing to litigate nonindividual PAGA claims in the superior court notwithstanding his agreement to arbitrate individual PAGA claims"]; see also *Viking River*, *supra*, 596 U.S. at pp. 662–663 [after concluding that "Viking is entitled to compel arbitration of Moriana's individual claim," the court stated, "*[t]he remaining question* is what the lower courts should have done with Moriana's non-individual claims"], italics added.)

Finally, and even assuming the trial court properly reached the standing issue, we agree with the parties that the trial court's conclusion that plaintiffs lost standing to litigate their non-individual claims is inconsistent with *Adolph*.

For these reasons, we conclude the dismissal order must be reversed.

We further note that neither the parties nor the trial court in connection with the motion to dismiss addressed plaintiffs' UCL claim. Despite failing to account for the UCL claim, the trial court nonetheless dismissed this action *in its entirety* with prejudice. This, too, was improper.

## DISPOSITION

The dismissal order is reversed and the matter is remanded to the trial

court for further proceedings consistent with this opinion. In the interests of justice, each party shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.891(a)(4).)

_____

Richman, J.

We concur:

_____

Stewart, P.J.

_____

Miller, J.

*Hormigas et al. v. Apartment Management Consultants, LLC*  (A167657)